UNITED STATES of America

v.

Willie B. JEFFERSON.

No. CR 84–111.

United States District Court, District of Columbia.

June 20, 1984.

Asst. U.S. Atty., William O'Malley, Washington, D.C., for U.S.A.

William Garber, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The defendant is charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). The case is now before the Court on the defendant's motion to suppress evidence and his motion to require the Government to disclose the identity of the informant, hereinafter referred to as SE, who furnished the information which led to the defendant's arrest on the above charge.

I

The underlying facts are as follows: Sometime prior to February 10, 1984, SE advised Officer Hickson that the defendant, who is known as Jack, was working Hanover Street and holding a stash of narcotics for another individual identified as Butch. At that time, Hickson did not know the defendant so SE had the officer drive through Hanover Street when SE and the defendant were standing together. A few days later, SE again advised Hickson that the defendant was on Hanover Street and was distributing cocaine to runners on behalf of Butch. SE advised Hickson that the defendant was driving a yellow Ford Granada, that the car was parked in the alley behind 9 Hanover Street, that the narcotics were in the trunk of the automobile, that the defendant had a large amount of cocaine in the trunk, that the person he referred to was Jack who had previously been pointed out to the officer, and that Jack was a black male, in his 50's, 5'9" tall and was wearing a blue corduroy hat, green jacket and blue jeans.

Hickson had known SE for ten years and knew that the information he provided had

always proved to be reliable and had led to the arrests and convictions of several persons. On one occasion, SE had given information which led to an arrest and conviction for murder. The officer testified that he had never known SE to be unreliable. In addition to the above, the officer had obtained information concerning the defendant from two other sources and that information tended to verify some of the information given by SE.

Hickson drove to Hanover Street and observed the defendant's automobile but the defendant was not on the scene. Hickson then drove away and called for an officer with a narcotics trained dog. Officer Willis reported with his dog, Buck. As the two officers approached the alley, they observed the defendant get into his car and pull out of the alley onto Hanover Street. The defendant then pulled back into the alley, stopped his automobile and stepped out. At this point, Hickson approached him and advised him that they were police officers and that they had information that he had narcotics in the car. They asked whether he objected to the dog going inside the automobile and sniffing for narcotics. They also advised the defendant that if Buck located narcotics, the defendant could be arrested.[1] The defendant advised them that he had no objection. Buck sniffed the inside of the automobile and appeared to be on to something when he sniffed the area between the rear seat and the rear back rest. Willis then took the dog to the back of the automobile, near the trunk area, and the dog gave a positive signal for narcotics. Hickson asked whether the defendant would open the trunk and the defendant answered in the affirmative. The defendant's "attempts" to open the trunk were unsuccessful however because the key he used did not work in the lock. The officer then asked for the keys so he could try to open the trunk. The officer used the correct key and immediately opened the trunk.[2] Buck was then allowed to look inside the trunk and he picked up a paper bag which was examined and found to contain the narcotics which forms the basis for the charge against the defendant.

## II

The defendant moves to suppress all of the evidence seized as the result of the warrantless search of the defendant's automobile. At the outset, the Court observes that the two pronged test developed in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) has been abandoned and the "totality of the circumstances" approach has been substituted in its place. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2328–2334, 76 L.Ed.2d 527 (1983). The decision in *Illinois* allows the Magistrate or Judge greater flexibility in determining whether there is probable cause than did the two pronged test of *Aguilar* and *Spinelli*, and in that sense, expands, rather than restricts, the court's ability to find probable cause.

 Having made the above observation, the Court concludes that even under the two pronged test established in *Aguilar* and *Spinelli*, the information which was given to the officer on February 10, 1984, established probable cause for the issuance of a warrant. Here, SE, who had been working with the police for approximately ten years and was considered a reliable informant, had identified the defendant to the officer on at least one previous occasion. Moreover, the officer had received corroborating information from two other sources. On the day in question, SE gave Officer Hickson a detailed descrip-

---

**1.** Although Hickson had been told that the narcotics were in the trunk, he testified he called for the dog and then had the dog first check the inside of the car as a ploy to keep the defendant from suspecting who was the informant.

**2.** Officer Hickson was familiar with the keys for that type of automobile and he was able to observe that while the defendant was "attempting" to open the trunk, he kept using the type key which is not a trunk key. When the defendant handed him the keys, the officer used what he thought was the correct key, and immediately opened the trunk.

tion of the defendant, and the defendant's automobile, and the location where the defendant could be found. He also described where the narcotics could be found in the automobile. Thus, the information furnished here, like that furnished in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) was sufficient to establish probable cause. The two prongs were met; first, the officer knew that SE had the "basis of knowledge" demonstrating that the drugs were where he said they were, and second, the officer knew the informant was credible and that his information was reliable based upon his past dealings with the informant and based upon his own observations when he arrived upon the scene where the defendant was located. Under these circumstances, the officer had probable cause to search the automobile, and certainly had reasonable grounds to briefly detain the defendant to check out the information he had received.

As noted however, the new test is based upon the "totality of the circumstances" rather than the two pronged test of *Aguilar* and *Spinelli*. The totality of the circumstances in this case give greater support for a determination of probable cause than did the facts in *Illinois*. In *Illinois*, the informant was unknown, although the officers' subsequent observations of the activities of Mr. and Mrs. Gates tended to confirm that the informant knew of what he wrote.[3] Here, the informant was known to the officer and known to be reliable and the independent observation of the officer corroborated and confirmed the information given by the informant. These circumstances support the finding of probable cause.

The facts supporting the action of the officers in this case go well beyond what was found in *Illinois*. Here the officers went to the location where SE reported the defendant's automobile could be found, and observed the defendant and the automobile. The officers then brought into the investi-

gation, Buck, a dog trained to sniff out narcotics. Defendant *consented* to Buck's entry into the automobile and it was there that Buck gave indications that there was contraband located near or behind the back seat of the automobile. This confirmed what the officers had already been told. When Buck was taken to the rear of the automobile, he gave a positive indication that the drugs were in the trunk. Buck thereafter completed his investigation by locating the drugs in the trunk.

The officers had the right to make the limited stop and to briefly but reasonably detain the defendant so they could complete their investigation. *See United States v. Place*, 462 U.S 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Of course, Buck's investigation, better described as the "Canine Sniff", did not constitute a "search". 103 S.Ct. at 2644–2645. The work of Buck thus established yet, additional probable cause to search the automobile.

Finally, it cannot be overlooked that the defendant consented to the search. The officers advised the defendant why they were there and what they were looking for and asked whether Buck could enter the automobile. The defendant consented. They also requested him to open the trunk and he consented and "attempted" to open the trunk. Although his "attempts" to open the trunk would not place him in the running for an Academy Award, it is clear that he thereafter handed the keys to the officer so the officer could open the trunk. While it might be argued that he was somehow coerced to cooperate with the officers because he had been advised of their mission, he offered nothing in evidence on that issue; thus, the evidence offered in support of the search is uncontradicted. The Court finds that the search was with the consent of the defendant.

For all of the above reasons, the Court concludes that the motion to suppress evidence must be denied.

---

**3.** The informant wrote an anonymous letter to the police setting forth some of the activities of the Gates and describing how the narcotics were packed up and transported back to Illinois. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2325, 76 L.Ed.2d 527 (1983).

As to the oral motion to suppress the statement, if indeed the defendant still pursues that motion, the Court concludes that the defendant's statement, to the effect that he did not know the drugs were in the automobile and that he had loaned the automobile to other persons, is admissible and was voluntarily made by the defendant as an explanation as to why narcotics were in the trunk.

## IV

The second motion filed by the defendant requests that the Court require the Government to identify SE. The Government opposes that motion citing the so-called "informer's privilege" which, "is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law." *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). "The scope of the privilege is limited by its underlying purpose." *Id.* Accordingly, the privilege is not absolute and may have to yield where the disclosure of the informant, "is relevant and helpful to the accused, or is essential to a fair determination of a cause." 353 U.S. at 60, 77 S.Ct. at 628 (footnote omitted). The materiality of SE's possible testimony must be based upon the nature of the charge against the defendant and the evidence relating to that charge. 353 U.S. at 62, 77 S.Ct. at 629.

The defendant is charged with possession of narcotics with intent to distribute.[4] To establish the defendant's guilt, the Government must prove beyond a reasonable doubt that (1) the defendant possessed the controlled substance, (2) that he did so knowingly and intentionally and (3) that he possessed the drugs with the specific intent to distribute them. District of Columbia Criminal Jury Instruction (3d ed. 1978), Instruction 4.32.

It is this Court's understanding that the Government does not intend to offer any direct evidence which would show the defendant selling drugs or which would show that he had been seen with drugs other than on February 10, 1984, at the time the officers searched his automobile. Rather, the Government only intends to call the two officers who found the drugs on February 10, and in addition thereto, a witness on the chain of custody, and an expert witness who will testify on the nature of the drugs which were found in the automobile. The Government has also proffered that it will call an expert who will testify concerning drug trafficking, the distribution of drugs in the District of Columbia, and the manner of distribution in the city. In short, the only testimony to be offered which will tie the defendant to the drugs, is the testimony of Officers Hickson and Willis. The jury will not hear any statements made by SE or the other informers.

Here there was no transaction as was the case in *Roviaro.* The Government's case rests solely upon the discovery of narcotics in the defendant's automobile, and not upon any transaction or interaction between the defendant and SE. The Government does not allege that SE took part in any transaction, but merely that at some point he observed the narcotics in the trunk of the automobile. These facts are no different from hundreds of other cases where an informer has observed the sale of drugs, or has actually participated in the purchase of drugs, and thereafter reported that incident to the authorities. Under these circumstances, the informer need not be identified since his testimony is not really material to the issues which would be raised at trial.

There is no issue of entrapment in the case and there is no suggestion that SE set up the defendant or played any part in the criminal occurrence. Under these circumstances, the Court concludes that the

---

**4.** The body of the indictment charges the defendant with possession with intent to distribute, but the caption of the indictment charges the defendant with "unlawful distribution of a controlled substance." The actual charge however is possession of narcotics with intent to distribute and the defendant is on notice of that charge.

Government is not required to reveal the identity of SE.

On February 10, the defendant advised the officers that he did not know about the drugs and that the drugs could have been placed in the automobile by a person or persons who had borrowed his automobile. But the defendant has made no other proffer on this request, and, of course, he is free to subpoena those persons who may have borrowed his automobile. The presentation of such evidence however does not require the identification of SE.

Taking all of these matters into consideration, the Court concludes that the defendant's motion requesting the Court to direct the Government to identify SE must be denied.

### ORDER

It is hereby

ORDERED that defendant's written motion to suppress evidence is denied, and it is further

ORDERED that defendant's oral motion to suppress statements is denied, and it is further

ORDERED that defendant's motion to require the Government to identify the informant in this case is denied.