UNITED STATES of America,

v.

Tommy EDELIN, Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, Bryan Bostick, Defendants.

No. CRIM. 98–264 RCL.

United States District Court, District of Columbia.

Jan. 23, 2001.

---

Cary Clennon, Washington, DC, for Defendant Bostick.

Pleasant S. Brodnax, Washington, D.C., for Defendant Tommy Edelin.

James W. Rudasill, Jr., Washington, DC, for Defendant Tommy Edelin.

Richard K. Gilbert, Washington, DC, for Defendant Johnson.

Christopher Davis, Washington, DC, for Defendant Earl Edelin.

Shawn Moore, Federal Public Defender for D.C., Washington, DC, for Defendant Marbury.

Jensen E. Barber, Washington, D.C., for Defendant Mosley.

William M. Sullivan, AUSA, Stephen Pfleger, AUSA, Washington, DC, for the Government.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Upon consideration of the various motions filed by the defendants and the government, the Court will deny the defendants' requests for additional discovery and grant the government's requests for an anonymous jury, a delay in the production of witness names, and the ability to recall witnesses during its case-in-chief. Before addressing each of the motions individually, the Court will analyze the dangerousness of the defendants and their willingness to interfere with the judicial process. These are crucial elements for determining what information should be disclosed and when it should be provided to the defendants.

## I. Background

The charges in this case stem from an alleged large drug conspiracy in the District of Columbia. The violence associated with this alleged conspiracy is remarkable. The conspirators allegedly committed fourteen murders and multiple counts of assault with intent to murder.

The six defendants,[1] scheduled to be tried beginning on March 26, 2001, are charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base, and one kilogram or more of heroin, in violation of 21 U.S.C. § 846; continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b); conspiracy to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. § 1962(d); armed robbery, in violation of 22 D.C.Code §§ 2901 & 3202; assault with intent to murder while armed, in violation of 22 D.C.Code §§ 503 & 3202; first degree murder while armed, in violation of 22 D.C.Code §§ 2401 & 3202; continuing criminal enterprise murder, in violation of 21 U.S.C. § 848(e)(1)(A); violent crime in aid of racketeering activity, in violation of 18 U.S.C. § 1959; illegal use of a firearm, in violation of 18 U.S.C. § 924(c)(1); assault with a dangerous weapon, in violation of 22 D.C.Code § 502; possession of a firearm during a crime of violence, in violation of 22 D.C.Code § 3204(b); money laundering, in violation of 18 U.S.C. § 1957; distribution of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); distribution of fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i); possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii); aiding and abetting, in violation of 22 D.C.Code § 105; and aiding and abetting, in violation of 18 U.S.C. § 2. One of the defendants, Tommy Edelin, faces the

---

1. The joinder of the defendants was held to be proper by previous order of this Court. *See United States v. Edelin,* 118 F.Supp.2d 36 (D.D.C.2000). Although several of the non-capital defendants protested joinder with a capital defendant for trial, the Court determined that joinder was appropriate and not unduly prejudicial to the non-capital defendants. The Court also addressed juror issues as they relate to the use of a death-qualified jury in the trial of the capital and non-capital defendants. *Id.* at 45–49.

death penalty. The government has decided not to seek the death penalty against the other five defendants, although they are accused of crimes that could lead to death penalty prosecution. These five defendants face the possibility of life in prison without parole.

## II. Finding of Dangerousness/Willingness to Interfere with the Judicial Process

Defendant Tommy Edelin and other defendants in this case have made requests for further discovery from the government. The government has responded before this Court that all discovery requests for information that does not threaten the safety of witnesses or informants have been complied with. The government further proffered that attorneys for the government have gone beyond the requirements of Federal Rule of Criminal Procedure Rule 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government has provided extensive discovery related to this case, along with descriptions of some of the evidence and how the government plans to use that evidence at trial. The government has already provided a wide variety of discovery materials, including its theory of liability, the factual scenario for each alleged murder, and a list of relevant aggravating and mitigating factors.

The defendants have requested additional discovery; some of the additional information requested includes plea agreements and other information that is sealed under order of this Court because the Court has determined that the release of such information would place potential witnesses at risk of injury or violence. It would be counterintuitive for the Court to allow discovery of such information at this time, as it would endanger individuals who are cooperating with law enforcement in this case. The disclosure of the information requested by defendant Tommy Edelin is not required under the law if the Court finds that the defendant poses a danger to witnesses against him. *See* 18 U.S.C. § 3432 (allowing the Court to delay the production of witness names when it is shown to a preponderance of the evidence that the safety of any person may be jeopardized). This statute, which provides discovery related protection for capital defendants, does not apply to the other five defendants in this case. *See infra* Section III(A).

The Court has come to the conclusion that the defendants here are dangerous and a threat to government witnesses on the basis of the indictment in this case and the information provided by the government to this Court. *See Government's Reply to Defendants Marbury's and Mosley's Oppositions to the Government's Motion for Empaneling an Anonymous Jury and Delaying the Production of Witness Names; Affidavit of Stephen Pfleger, Assistant United States Attorney, December 18, 2000*. The indictment, supported by a finding of probable cause by the grand jury, shows multiple acts of violence by various defendants against potential witnesses against them.

The Superseding Indictment in this case shows that the Grand Jury found probable cause to find that defendant Tommy Edelin made efforts to arrange the murders of several potential witnesses against him. *See Superseding Indictment, Count One, Overt Acts 33, 90–93*. Defendant Tommy Edelin is also charged with arranging the murder of Ronnie Middleton, an incarcerated co-defendant and a potential witness in this case. *See Superseding Indictment, Counts 46–69*. The government has proffered other information regarding an ongoing pattern of behavior by defendant Tommy Edelin and several other defendants in this case to threaten and intimidate potential witnesses to prevent those witnesses from providing full and accurate testimony at trial. The grand jury found probable cause to believe that the defendants committed multiple violent acts, with each defendant being charged with at least one

count of murder, as well as additional counts of assault with intent to murder. While all of the murders allegedly committed by the conspiracy were not perpetrated against witnesses, the showing of probable cause that supports the accusations of violent acts lends credence to the government's assertions that the defendants in this case are extremely dangerous and prone to violent acts.

In addition to the indictment, the government has made oral proffers of evidence and a written affidavit proffering examples of other known attempts made by the defendants and their associates to interfere with the judicial process. These examples, not included in the Superseding Indictment, allege efforts by defendant Tommy Edelin, and others working on his behalf, to convince several witnesses to lie for him during the upcoming trial. The government proffers that in 1997, defendant Tommy Edelin allegedly assisted another member of the organization by making arrangements for the murder of a critical witness who was cooperating with the government in another case against that member of the organization. That murder attempt was ultimately unsuccessful. Defendant Tommy Edelin made statements at that time that if he were ever charged with a serious offense he would not plead guilty, but would instead kill anyone who cooperated with the government.

Allegations against defendant Earl Edelin include that he has made a series of contacts with the family of a potential government witness to intimidate the witness and prevent the witness from testifying at the upcoming trial. The government proffers that defendant Earl Edelin has previously assisted another member of the organization by hiding a critical witness from the government so that the case pending against that member of the organization would be dismissed.

Defendant Shelton Marbury, while not named in the affidavit submitted by the government, has allegedly committed numerous violent acts, although not specifically against potential witnesses in this case. Defendant Shelton Marbury allegedly committed at least two murders while using a firearm. The government proffers that in 1997, defendant Henry Johnson allegedly threatened to kill two witnesses in a case prosecuted in the Superior Court for the District of Columbia involving an assault with a firearm and related charges. In this case, defendant Henry Johnson is charged with committing multiple murders while using a firearm.

The government alleges that while incarcerated in relation to this case, defendant Mosley, and others acting on his behalf, have repeatedly threatened to kill a potential government witness and a member of the witness's family if the potential witness testifies at the upcoming trial in this matter.

Defendant Bryan Bostick is alleged to have arranged for another person to deliver a threatening message to the family of a potential government witness in order to prevent the witness from testifying at the upcoming trial. Defendant Bostick is also alleged to have informed the potential witness that he wanted to kill all the witnesses who were cooperating with the government; these allegations are in addition to the charges against defendant Bostick in *United States v. Kevin Gray, et al.*, criminal case no. 00–157(RCL), also before this Court. Defendant Bostick faces further allegations of ongoing efforts to threaten and intimidate potential witnesses in the *Gray* case.

Aside from the specific counts in the indictment against the different defendants, and the proffers by the government with respect to those individual defendants, the government asserts that another member of the organization has interfered with the judicial process. The government proffers that during the 1998 murder trial of a juvenile member of the defendants' organization, an associate of the defendants made threatening ges-

tures to a witness who was in the process of testifying. The witness stopped testifying and did not resume until the person making threatening gestures was removed from the courtroom.

All of the activities mentioned above indicate that the defendants in this case, and their associates, are willing to interfere with the judicial process. In this case there are charges of multiple murders and a wide-ranging conspiracy to distribute drugs. Most of the defendants here face the possibility of life imprisonment without parole; one defendant, Tommy Edelin, faces the possibility of the death penalty. The serious nature of these potential penalties may cause the defendants to overlook a potential additional sentence for obstruction of justice or tampering with a witness. It would be unwise for the Court to require the government to release the names of potential witnesses to the defendants in this case at this time.

The dangerousness of the defendants, their access to other individuals who are willing to act on their behalf, and their willingness to approach potential witnesses in this case in order to, alter or prevent damaging testimony all indicate that the defendants should not be provided with the information they seek in the discovery motions and the requests for witness and informant names. If the Court were to provide this information to the defendants here, it would needlessly jeopardize the safety of potential witnesses and government informants. While the defendants claim that they are unable to mount a constitutionally adequate defense without this information, other courts have found that withholding the names of potential witnesses until several days before those witnesses testify is not a violation of a criminal defendant's constitutional rights. *See, e.g., United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984) (holding that turning over Giglio material on the day the government witnesses are scheduled to testify satisfies defendants' right to a fair trial).

The Supreme Court has never established a specific amount of time before trial when a *Brady* disclosure regarding witnesses must be made. It is true that a disclosure by the government

> must be made at such a time as to allow the defense to use favorable material effectively in the *preparation* and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure. *United States v. Pollack*, 534 F.2d 964, 973 (D.C.Cir.1976), *accord United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir.1988).

It is also true that the interests of justice would not be served by premature release of information that could compromise the security and safety of witnesses and informants who have been cooperating with law enforcement.

■ The facts set forth by the government establish by a preponderance of the evidence that providing defendants with a list of witnesses, along with the additional information defendants have requested, "may jeopardize the life or safety of any person." 18 U.S.C. § 3432. Given the findings by the Grand Jury, the Court finds that the defendants' willingness to interfere with the judicial process through a pattern of intimidation, threats and violence indicates that the names of witnesses should not be provided to the defendants or defense counsel prior to the Thursday before each witness will testify. This will allow defense counsel a minimum of three days to prepare for the testimony and cross-examination of government witnesses. The government has stated that all material will be provided to the defendants at trial so that defense counsel may effectively challenge the credibility of the government's witnesses and secure the defendant's right to a fair trial. *See United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir. 1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984).

### III. Motions Related to Witnesses, Informants, Co-conspirators

#### A. Motion by Government to Delay the Production of Witness Names

■ The Motion by the government to Delay the Production of Witness Names is GRANTED, pursuant to the analysis given above in the discussion of the dangerousness of the defendants and the reasoning below. *See supra* Section II. Defendants Marbury, Mosley, and Tommy Edelin opposed the government's motion to Delay the Production of Witness Names, they were recently joined by defendant Earl Edelin. The government has already declined to seek the death penalty against defendants Marbury, Mosley, and Earl Edelin, therefore, these three defendants are not entitled to the benefits conferred by 18 U.S.C. § 3432. The statute plainly reads that a "person" charged with a capital offense is covered by the statute, it does not say that a person tried with a capital defendant is covered by the statute. 18 U.S.C. § 3432.

Defendants Marbury, Mosley, and Earl Edelin nevertheless claim that they have standing pursuant to 18 U.S.C. § 3432 because they are being tried with a capital defendant and they were death-penalty eligible before the government declined to seek the death penalty against them. Different circuits have interpreted the law to the contrary. *See United States v. Grimes,* 142 F.3d 1342, 1347 (11th Cir. 1998) (finding that statutes such as 18 U.S.C. § 3432 do not apply to defendants where the government has declined to seek the death penalty in their cases); *United States v. Kaiser,* 545 F.2d 467, 475 (5th Cir.1977); *United States v. Crowell,* 498 F.2d 324, 325 (5th Cir.1974); *United States v. Hoyt,* 451 F.2d 570, 571 (5th Cir.1971), *cert. denied,* 405 U.S. 995, 92 S.Ct. 1272, 31 L.Ed.2d 465 (1972); *Reed v. United States,* 432 F.2d 205, 206–08 (9th Cir.1970); *Hall v. United States,* 410 F.2d 653, 660–61 (4th Cir.1969), *cert. denied,* 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969).

Even if these three defendants did have standing under the statute, and because defendant Tommy Edelin does have standing under § 3432, the Court finds that given the showing of probable cause in the indictment and the proffers of evidence made by the government as to the dangerousness of the defendants and their willingness to interfere with the judicial system, the Court will not order that the names of witnesses be produced to the defendants until the Thursday before each witness will be called at trial. The Court must find by a "preponderance of the evidence that providing the list [of witnesses] may jeopardize the life or safety of any person." 18 U.S.C. § 3432. The analysis in Section II *supra* plainly shows why the Court is not ordering the immediate production of witness names and addresses in this case. The same analysis applies to the Court's decision to delay the production of witness names until the Thursday before those witnesses testify in this trial. The government has shown by a preponderance of the evidence that the release of witness names may jeopardize the life or safety of those witnesses or their family members. The alleged activities of the defendants in threatening potential witnesses and their families has given the Court a preview of the danger witnesses would face if their names and addresses were to be revealed to the defendants prior to trial. The government motion is GRANTED.

#### B. Motion by Defendant Tommy Edelin for Disclosure of Impeaching Information [310]

■ Although defendant Tommy Edelin does have the right to discovery of impeaching information, further impeaching information need not be produced at this time, given the Court's decision to delay the production of witness names. *See supra* Section III(A). The willingness of the defendants to harass and intimidate witnesses, and the willingness of the defendants to interfere with the judicial process

led to the decision of this Court to not produce the names of witnesses until the Thursday before they testify in the upcoming trial. The same analysis supports the delay in disclosing impeaching information against those witnesses. Defendant Tommy Edelin's Motion is hereby DENIED.

### C. Motion by defendant Tommy Edelin for Pretrial Production of Statements of Individuals Not to be Called as Witnesses [308]

■ The Court DENIES the Motion on the grounds that the government has proffered that all evidence has been submitted to the defendant unless it threatens the safety of a witness. Insofar as defendant Tommy Edelin's request applies to information not covered by *Brady,* the lack of legal support for the assertions of defendant Tommy Edelin, combined with the provisions of Rule 16 of the Federal Rules of Criminal Procedure, indicate that the requested material need not be provided to the defendant. Criminal defendants are only entitled to statements of non-testifying witnesses or co-conspirators if those statements qualify as *Brady* material. *See United States v. Williams–Davis,* 90 F.3d 490, 512–12 (D.C.Cir.1996), *cert. denied,* 519 U.S. 1128, 117 S.Ct. 986, 136 L.Ed.2d 867 (1997).

■ As to *Brady* information that is being withheld due to the concern for the safety of individuals in conjunction with 18 U.S.C. § 3432, this situation requires that the Court proceed cautiously, aware not only of the defendant's rights to pretrial discovery, but also of the threat defendant Tommy Edelin poses to the safety of witnesses and potential witnesses. *See supra* Sections II and III(A). The Court has made extensive findings of the dangerousness of the defendants in this case.

The court in *United States v. Tarantino* stated that it would be a violation of the law to disclose witness statements prior to the trial. 846 F.2d 1384, 1414 (D.C.Cir. 1988), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). "Federal Rule of Criminal Procedure 16(a)(2) prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the *Jencks Act,* 18 U.S.C. § 3500(a)." *Id.* It would be nonsensical to disclose the statements of witnesses who will not be appearing at trial while protecting those witnesses who will be testifying at trial. So long as the defendants are provided *Brady* information, the statements of witnesses who will not be called at trial shall remain in the hands of the government.

The Court, cognizant of the government's proffer that all exculpatory evidence and other materials that can be released to the defendants without endangering the safety of witnesses has been turned over to the defendants, DENIES the motion by defendant Tommy Edelin, with the understanding that all *Brady* information will be provided to the defense at the appropriate time.

### D. Motion by defendant Tommy Edelin to Disclose Confidential Informants [309]

■ The Court, after considering the Motion by defendant Tommy Edelin and the Motion by the government to delay the production of witness names, DENIES the Motion by defendant Tommy Edelin to Disclose Confidential Informants. See *supra* Section III(A). The Supreme Court has refused to adopt an inflexible rule that the identity of an informer or cooperating witness must be disclosed whenever the testimony may be relevant and helpful to the accused. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The government enjoys a qualified though "time-honored privilege to withhold the identity of its informants from criminal defendants." *United States v. Brodie,* 871 F.2d 125, 128 (D.C.Cir. 1989). The privilege is appropriately used here if the government otherwise complies with *Brady v. Maryland* and other applicable cases protecting the interests of the defendants. *Brady,* 373 U.S. 83, 83 S.Ct.

1194, 10 L.Ed.2d 215 (1963). The government has indicated to the Court that to the extent that the defendant is entitled to information about confidential informants for impeachment purposes, the government thoroughly intends to disclose all such information as required by *Brady*, and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), at the same time it discloses *Jencks* material, so that such information may be used during cross-examination.

The Court must balance the public's interest in law enforcement and protecting the informant's identity against the defendant's right to prepare a defense. *See United States v. Jefferson*, 593 F.Supp. 85, 89 (D.D.C.1984); *Roviaro v. United States*, 353 U.S. at 62, 77 S.Ct. 623. The government is not required to disclose the identity " 'of an informant who was not an actual participant in or a witness to the offense charged.' " *United States v. Warren*, 42 F.3d 647, 654 (D.C.Cir.1994) (*quoting United States v. Skeens*, 449 F.2d 1066, 1071 (D.C.Cir.1971)). It is the defendant's " 'heavy burden . . . to establish that the identity of an informant is necessary to [the] defense.' " *United States v. Warren*, 42 F.3d at 654 (*quoting United States v. Skeens*, 449 F.2d at 1070). In making this determination as to whether disclosure of the informant's identity is required, the Court must use a totality of the circumstances approach, consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant circumstances. *Roviaro*, 353 U.S. at 62, 77 S.Ct. 623.

Defendant Tommy Edelin has failed to articulate a sufficient basis as to why the testimony of the informants might be helpful to his defense. Defendant's "mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden." *United States v. Mangum*, 100 F.3d 164, 172 (D.C.Cir.1996). For this reason alone, disclosure is not required. *United States v. Skeens*, 449 F.2d 1066, 1070 (D.C.Cir.

1971). In this case, there is the additional element of the dangerousness of the defendants. The Court will not order the disclosure of the identities of confidential informants when it will unnecessarily place the personal safety of those informants in danger. Where the disclosure will place the informant in personal danger, and the prospective testimony is not exculpatory, courts should not order disclosure. *United States v. Pelton*, 578 F.2d 701, 797–08 (8th Cir.1978), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1979). The government has represented to the Court that the prospective testimony of the informants in this case is not exculpatory. Therefore, because of the serious nature of the crimes charged, and concern for the safety of the confidential informants, the government is not required to disclose the names of all confidential informants.

Defendant Tommy Edelin has not even speculated as to the information the informants whose identities he requests might provide in aid of his defense. His request for their identities is DENIED.

### E. Motion by defendant Tommy Edelin for Discovery of Statements of Co-defendants and Co-conspirators [311]

The government has represented to this Court that all discovery under *Brady v. Maryland* has been produced to the defendants unless the release of that information would compromise the security of witnesses or informants. *See supra* Section II. Defendant Tommy Edelin would be entitled to the information he requests if it were exculpatory, including that information which might affect the jury's determination of the credibility of a material prosecution witness. *See Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The request for statements of co-defendants and co-conspirators goes beyond *Brady* and *Giglio* however, and should be addressed apart from the *Brady* discussion *infra* Section IV.

The D.C. Circuit has held that the *Jencks Act* does not entitle a defendant to

statements of non-testifying co-conspirators. *See United States v. Williams–Davis,* 90 F.3d 490, 512–14 (D.C.Cir.1996), *cert. denied,* 519 U.S. 1128, 117 S.Ct. 986, 136 L.Ed.2d 867 (1997). The *Davis* court, citing its reasoning in *United States v. Tarantino,* 846, F.2d 1384, 1418 (D.C.Cir. 1988), held that Rule 16(a)(1)(A) could not be read to permit the discovery of all statements of co-conspirators in response to interrogation by government agents. The *Davis* court found that such disclosure would violate the decision of Congress to balance the "defendant's interest in the use of non-witness materials and the government's interest in their non-disclosure." *Davis,* 90 F.3d at 513 (citations omitted).

This Circuit has also found that the pretrial disclosure by the government of witness statements, except as provided by the *Jencks Act,* would be a violation of Federal Rule of Criminal Procedure 16(a)(2). *See United States v. Tarantino,* 846 F.2d 1384, 1414 (D.C.Cir.1988), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). A natural extension of this rule would be to prohibit the disclosure of statements by individuals who will not be called as witnesses at trial, so long as the government complies with *Brady* and its other discovery obligations. Defendant Tommy Edelin's request for all statements made by codefendants has already been complied with by the government. Defendant Tommy Edelin's Motion for further discovery of statements of co-defendants and co-conspirators is DENIED.

### F. Motion by defendant Earl Edelin for Discovery and Inspection Concerning Government's Use of Informants, Operatives and Cooperating Individuals [296–1]; Motion by defendant Earl Edelin for Disclosure of Exculpatory Evidence and Notice to the Government of Exculpatory Evidence Requested Concerning Government's Use of Informants, Operatives and Cooperating Individuals [296–2]

The information requested by defendant Earl Edelin in his Motion parallels the information requested by this defendant and other defendants in various motions. Insofar as the Motion requests further *Brady* and *Giglio* disclosures, that type of evidence has been discussed extensively in other portions of this opinion and will be disclosed at a later date. *See* Section IV, *infra.* In terms of the requests for information regarding confidential informants, government operatives and cooperating individuals, where this information is subject to disclosure pursuant to *Brady,* it will be disclosed prior to the testimony of each witness. The Court has previously addressed information that if disclosed will threaten the safety of any person in the finding of dangerousness in Section II, *supra.* This information was also addressed in the discussion of defendant Tommy Edelin's request for the identities of confidential informants in Section III(D), *supra,* and the Omnibus request for *Brady/Giglio* information in Section IV(D), *infra.* The delay in producing the names of other witnesses is addressed in Section III(A), *supra.* For the reasons stated in these distinct sections, and because of the extensive evidence already produced and the government's assurances to this Court that all evidence that should be produced pursuant to *Brady* and *Giglio* has been produced so long as it does not threaten the safety of any person, further discovery of the requested items is not warranted.

The dangerousness of the defendants, established in Section II, *supra,* leads the Court to conclude that any information that could endanger the safety of witnesses, informants, operatives, and cooperating individuals should not be released at this time. When such evidence is disclosed to the defendants on the Thursday prior to the witness testifying, it will allow the defendant and his counsel to investigate the witness. Information regarding informants, operatives, and cooperating individuals who are not to be called as wit-

nesses need not be disclosed unless it qualifies as *Brady* information. This reasoning closely follows the reasoning of this Court in Section III(E), *supra,* and the cases cited there. *See United States v. Williams–Davis,* 90 F.3d 490 (D.C.Cir. 1996); *United States v. Tarantino,* 846 F.2d 1384 (D.C.Cir.1988). It is hereby ORDERED that these Motions be DENIED.

## IV. Brady/Giglio Discovery

### A. Motion by defendant Tommy Edelin for Discovery [211–1]; Motion by defendant Tommy Edelin for Discovery [302]

These Motions by defendant Tommy Edelin were made before defendant Edelin's attorneys became the holders of one of the two remaining caches of non-documentary evidence distributed by the government. Defendant Tommy Edelin's attorneys have also received duplicates of all documents produced by the government with relation to this case. Although defendant Tommy Edelin's current attorneys had their case files stolen from them, the government has sought to replace all lost discovery. The government also has represented to this Court that the government intends to disclose all required *Brady v. Maryland* information, insofar as the requirements of *Brady* have not been met in the production of evidence to the defendants. *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The only evidence in the custody of the government that has not been disclosed to defendant Tommy Edelin is evidence that if revealed might endanger the safety of witnesses in this case. Pursuant to the Court's findings on the dangerousness of the defendants and the prior disclosures made by the government to the defendants, defendant Tommy Edelin's Motions for Discovery are hereby DENIED.

### B. Motion by defendant Tommy Edelin for Inspection [211–2]

This Motion by defendant Tommy Edelin is hereby DENIED as cumulative of other discovery motions addressed in this opinion. Defendant Tommy Edelin's counsel, as one of two repositories of the color photographs, video, and audio tapes gathered by the government in this case, have extensive access to much of the government's evidence. The discovery provided by the government to defendant Tommy Edelin's counsel, is sufficient to meet the request for inspection of defendant Tommy Edelin.

### C. Motion by defendant Tommy Edelin for a Bill of Particulars [301–1]; Motion by defendant Marwin Mosley for a Bill of Particulars [278–1]

▬ Defendant Mosley's and defendant Tommy Edelin's Motions for a Bill of Particulars, requesting more specific information with regards to the charges and evidence against each of them, are hereby DENIED. The charges against each of the defendants are alleged with sufficient particularity. A bill of particulars is appropriate to "ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against a retrial on the same charges." *United States v. Butler,* 822 F.2d 1191, 1193 (D.C.Cir.1987); *United States v. Esquivel,* 755 F.Supp. 434, 436 (D.D.C.1990). The charges in the indictment are sufficient to meet these purposes in this case.

▬ The preparation of a defense is aided by the substantial discovery already provided by the government in this case. It is not the purpose of a bill of particulars to provide for "whole sale discovery of the Government's evidence . . . ." *United States v. Torres,* 901 F.2d 205, 234 (2d. Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). When the indictment is sufficiently detailed, or the requested information is available in some other form, a bill of particulars is not

required. *See Butler,* 822 F.2d at 1193. "It is not the function of a bill of particulars to provide detailed disclosure of the government's evidence in advance of trial." *Overton v. United States,* 403 F.2d 444, 446 (5th Cir.1968).

▮▮▮ Defendant Mosley challenges the indictment as vague and possibly multiplicitous. The Court finds that the indictment is proper, and the charges against defendant Mosley pass constitutional muster without the addition of a bill of particulars. A defendant in a conspiracy need not be charged with participating in all aspects of the conspiracy. The Supreme Court has held that "a conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of the other." *Salinas v. United States,* 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). The government does not have to prove that the defendants here participated in or agreed to each and every overt act in furtherance of the conspiracy. This is true of the conspiracy to distribute narcotics as well as the RICO conspiracy. The acts with which defendant Mosley is charged are sufficient to allow him to be properly named as a defendant in both of the conspiracies charged. There is no requirement that the defendant be a participant in the entire conspiracy in order to be charged with the conspiracy. The Court of Appeals in this Circuit has held that "where the evidence shows that a defendant knew of the conspiracy, associated himself with it, and knowingly contributed his efforts during its life to further its design, he may be convicted of the conspiracy." *United States v. Bridgeman,* 523 F.2d 1099, 1108 (D.C.Cir.1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976). This liability exists even where a defendant joined the conspiracy after it began, did not participate in all

acts of the conspiracy, and where acts in furtherance of the conspiracy took place prior to and after the defendant joining the conspiracy. *Id.* at 1108. The information in the indictment alleges that the defendants knew of the conspiracy and acted in furtherance of the conspiracy. Thus, defendants Mosley and Tommy Edelin are properly charged with conspiracy to distribute narcotics and RICO conspiracy.

The constitutional rights underlying a bill of particulars are met by the information already before the defendants. The voluminous discovery already provided to the defendants in this case more than compensates for the lack of a bill of particulars. No bill of particulars need be provided. Defendants' Motions are DENIED.

**D. Omnibus Motion by defendant Shelton Marbury for Production of Brady/Giglio Materials [276–1], joined by defendant Earl Edelin [297–1], also joined by defendant Bryan Bostick [282]**

The government has informed the Court that all evidence subject to disclosure under *Brady* and *Giglio* has been turned over to the defendants as long as that evidence does not threaten the safety of any person. The government has indicated that it intends to provide all evidence the defendants are entitled to under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), along with *Jencks Act* material. The government clearly stated that disclosure of evidence to the defendants has gone beyond the limits required by the law. The government has revealed theories of liability, disclosed the number of witnesses to certain incidents and provided the basis for identifications.

The defendants seek the identity of cooperating witnesses or government informants. Beyond the identity of such witnesses, the defendants are requesting plea agreements, presentence reports and other documents relating to these witnesses.

Some of this information will be withheld until the time of trial, if the release of the information would threaten the safety of any person. This is proper under 18 U.S.C. § 3432. Along with the identities of the witnesses, the withheld information will be provided the Thursday before each witness testifies during the upcoming trial. This will enable the defendants to use any impeachment evidence for cross-examination purposes during the trial.

Defendant Tommy Edelin made requests similar to the *Brady/Giglio* requests here. The requests by the defendants for the names of confidential informants are denied pursuant to the analysis provided in Section III(D) *supra*. The safety of the confidential informants would be compromised if the government were required to divulge their names. The government has also informed the Court that the anticipated testimony of these confidential informants is not exculpatory in nature, there is therefore no requirement that the government provide this information to the defendants at this time.

 Another argument being made as to the impeachment evidence and the disclosure of the names of witnesses is that if information is revealed to the defendants on the Thursday before a witness testifies, there will not be sufficient time for them to investigate impeachment and other materials. It is true that the government must provide impeachment styled information concerning government witnesses in time for defendants to make use of it. *See United States v. Wilson*, 160 F.3d 732, 742 (D.C.Cir.1998), *cert. denied*, 528 U.S. 828, 120 S.Ct. 81, 145 L.Ed.2d 69 (1999). The government has indicated that it intends to disclose impeachment information as required by *Brady* and *Giglio*, at the same time that it discloses *Jencks* material, in advance of the testimony of various witnesses so that such information may be used during cross-examination. The disagreement here is over how much time should be allowed prior to the testimony of each witness for investigation of the impeachment evidence.

The Third Circuit has held that *Brady* impeachment material, along with *Giglio* and *Jencks Act* material, must be supplied to the defendant, but this material does not have to be produced until after the relevant witness has testified. *See United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir. 1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). In this case, the Court has decided that all of the *Brady*, *Giglio*, and *Jencks Act* information must be turned over on the Thursday before each witness testifies. When the release of that information threatens the safety of witnesses and other persons, it seems a more than reasonable compromise between the rights of the defendant to prepare his defense and the need of the government to protect its witnesses and other individuals related to this case.

Given the prior Supreme Court rulings in this area and the practice of other courts, the Court finds that disclosure on the Thursday before each witness testifies will allow the defendants to make use of that information. *See supra* Section III(A). The time provided by the Court will balance the interests of the defendants in the impeachment evidence and other information with the safety of witnesses and other persons related to this case. *See United States v. Jefferson*, 593 F.Supp. 85, 89 (D.D.C.1984).

The Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), stated that the problem there was "one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.... a proper balance ... must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 77 S.Ct. 623. While the analysis in *Roviaro* is applicable to this case, it is noteworthy that

in *Roviaro* there was no finding of dangerousness with regards to the defendant. *Roviaro*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Supreme Court held in *Roviaro* that the identity of a government informant was only required to be produced to the defendant when the informant was the only witness of the alleged criminal activity and was a material witness as to the intent of the accused. *Id.*

In this case, disclosure, a minimum of three days prior to the relevant testimony, is more than adequate for the defendants to prepare their defense. The Motion by defendant Marbury, joined by defendants Earl Edelin and Bostick, for Production of *Brady/Giglio* Materials is hereby DENIED.

## V. Discovery Related to the Death Penalty

### A. Motion by defendant Tommy Edelin to Compel Disclosure of United States Attorney's Initial Recommendation Regarding Intent to Seek the Death Penalty [304]

 Federal Rule of Criminal Procedure 16(a)(2) provides that except where specifically authorized elsewhere in Rule 16, the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case." Defendant Tommy Edelin makes the same error he made in his Motion for Discovery of Evidence to be Used as Aggravators. He confuses evidence that he is entitled to with information about the decisions and recommendations made by the government attorneys who have worked on his case. The defendant, while entitled to extensive production of evidence and to notice of the statutory factors involved in the decision to seek the death penalty against him, is not entitled to a disclosure of the internal documents of the United States Attorney's Office, nor is the defendant entitled to

knowledge of all aspects of the decisions made in his case.

The defendant's request for information infringes on the deliberative process privilege, as well as the attorney-client privilege and the work product privilege. *See, e.g., Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862–66 (D.C.Cir.1980); *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 616 (D.C.Cir.1997). The deliberative process privilege has been recognized by the Circuit Court of Appeals of the District of Columbia as one that enables government agencies to come to well-reasoned decisions on important matters. *See, e.g. Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990); *In re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980); *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

 Materials generated prior to the government taking a decision, and deliberative materials, which reflect the consultation of different government officials in the decision-making process, are privileged when their disclosure would "expose the deliberative process within [the] agency." *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 87–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Chemical Weapons Working Group v. U.S. Environmental Protection Agency*, 185 F.R.D. 1, 2–3 (D.D.C.1999).

 Defendant Tommy Edelin has submitted a vague request for materials reflecting the recommendations of the United States Attorney to the Attorney General regarding the decision of whether the death penalty should be sought against the defendant. The materials he requests should not be disclosed to the defendant. They would necessarily reveal the deliberative process which brought about the At-

torney General's decision to seek the death penalty against defendant Tommy Edelin. The Ninth Circuit has held that the government's pre-decisional death penalty evaluation form and prosecution memorandum are protected by the deliberative process privilege. *See United States v. Fernandez*, 231 F.3d 1240, 1245 (9th Cir.2000). Simply put, the defendant is not entitled to probe into the opinions, recommendation, or decisions of the United States Attorney and the Attorney General. *See Wolfe v. Department of Health and Human Servs.*, 839 F.2d 768, 775–76 (C.A.D.C.1988) (*en banc); Skelton v. United States Postal Serv.*, 678 F.2d 35, 39 (5th Cir.1982).

The attorney work product doctrine, in conjunction with the attorney-client privilege, further shields the information requested from discovery by defendant Tommy Edelin. Although the defendant faces the most severe of penalties and obviously would seek all available information from the government with regards to his case, he is not entitled to ignore the privileges and protections established by the law to facilitate the just resolution of cases. The attorney work product doctrine was explicitly defined by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It was reinforced in this Circuit in *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980).

 The doctrine precludes discovery of the mental impressions and work product of attorneys, whether those mental impressions are captured in notes, memoranda, briefs, or another form, so long as the work product was produced in the anticipation of litigation. Obviously the decisions made by the United States Attorney and the Attorney General were made with an eye to litigation, the ultimate trial in this case. Finally, as cited elsewhere in this opinion, Rule 16 of the Federal Rules of Criminal Procedure specifically excludes from discovery "reports, memoranda, [and] other internal government documents made by the attorney for the government

or any other government agency investigating or prosecuting the case." Fed. R.Crim.P. 16(a)(2). The types of documents sought here would fall under the work product doctrine, as they contain the mental impressions of different attorneys who worked on this case in anticipation of litigation. Therefore, the documents should be precluded from disclosure on the basis of the work product doctrine. There is, however, another grounds for denying the defendant's Motion for the discovery of this information.

 The attorney-client privilege protects confidential communications made "between clients to their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C.Cir. 1998) (*citing In Re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984)); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 160–61 (D.D.C.1999). In this context, the governmental agency serves as the client, and the government attorney is its attorney. *See Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 618 (D.C.Cir.1997); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980). Any communication, intended to remain confidential, that was conveyed by the United States Attorney to the Department of Justice for the purpose of formulating a decision by the government as to whether to seek the death penalty, would qualify as attorney-client privileged communications. Those communications would not be discoverable.

 Defendant Tommy Edelin specifically requests the written recommendation concerning the death penalty from the United States Attorney to the Attorney General. The defendant argues that this information is discoverable pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This misconstrues *Brady* however, insofar as the *Brady* rule imposes an obligation on the government to disclose evidence that is favorable to the accused and material to

guilt or punishment, and not otherwise available to the defense. *See Strickler v. Greene,* 527 U.S. 263, 280–81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Williams–Davis,* 90 F.3d 490, 514 (D.C.Cir.1996), *cert. denied,* 519 U.S. 1128, 117 S.Ct. 986, 136 L.Ed.2d 867 (1997). Materiality of evidence is determined by whether there is a "reasonable probability" that its disclosure would affect the outcome of the proceeding. *See Strickler,* 527 U.S. at 280–81, 119 S.Ct. 1936; *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

In this instance, however, the materials sought by the defendant are privileged and thus, not evidence. *See Wood v. Bartholomew,* 516 U.S. 1, 6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (finding that polygraph results were not evidence for *Brady* purposes because they were inadmissible under state law). *See also United States v. Winner,* 641 F.2d 825, 832 (10th Cir.1981) (approving claim of privilege by subordinate officials of the Justice Department in criminal case involving *Brady* requests). The requested information cannot be categorized as material, in terms of *Brady,* because the information is inadmissible, and thus cannot affect the outcome of the trial or sentencing. *See Wood,* 516 U.S. at 6, 116 S.Ct. 7. The defendant has made no showing that the disclosure of these materials would lead to the discovery of admissible evidence, therefore the disclosure of the United States Attorney's recommendation is not warranted.

Defendant Tommy Edelin's Motion to Compel Disclosure of the United States Attorney's Initial Recommendation Regarding Intent to Seek the Death Penalty is hereby DENIED.

### B. Motion by defendant Tommy Edelin for Discovery of Evidence to be Used as Aggravators [305]

Defendant Tommy Edelin requests much of the same discovery here that he requests in other motions addressed in this Opinion. The Court's response is much the same. The government has complied with its discovery obligations under Federal Rule of Criminal Procedure 16. The government is also aware of its discovery obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), addressed elsewhere in this Opinion. *See supra* Sections III, IV. Defendant Tommy Edelin requests discovery in addition to the extensive discovery already provided to him, including materials that would reveal the names of cooperating witnesses and government informants. The Court has fully addressed the safety concerns for those witnesses and other persons related to this case. *See supra* Sections II, and III.

The reasons stated above would be sufficient to deny the Motion of defendant Tommy Edelin for additional discovery of evidence to be used as aggravators. The Federal Rules themselves, however, limit further discovery. Fed.R.Crim.P. 16(a)(2) provides that except where specifically authorized, Rule 16, "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case." The rule further stipulates that it does not "authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500."

■ Defendant's assertion that he has inadequate notice of the aggravating factors upon which the government will rely in the sentencing phase of the trial is not upheld by the applicable statutes nor by cases from different courts. The government's notice of intent to seek the death penalty, combined with the indictment, provides the defendant with legally sufficient notice of the aggravating factors the

government will use at the sentencing phase of the trial. The district court in *United States v. Nguyen* held that a capital defendant was not legally entitled to notice beyond *Brady* at his sentencing. *Nguyen,* 928 F.Supp. 1525, 1548–52 (D.Kan.1996), *referencing Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The *Nguyen* court also denied the defendant's request for the disclosure of government interviews, memoranda and reports of witnesses. The details requested by the defendant in *Nguyen* and here by defendant Tommy Edelin are not required under the Constitution, insofar as they go beyond the requirements of *Brady v. Maryland. See Nguyen,* 928 F.Supp. at 1545–46; *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

This Court finds, as the *Nguyen* court did, that Fed.R.Crim.P. 16(a)(2) indicates that there is no legal authority for the discovery requested by the defendant. *See Nguyen,* 928 F.Supp. at 1549. The Court also finds that the provisions of 18 U.S.C. § 3593 require that the government give adequate notice of the information it intends to use in support of the aggravating factors. "Adequate notice," however, does not mean that disclosure of this information is required at this time. The government's notice of intent to seek the death penalty, filed in this case with regards to defendant Tommy Edelin, complies with the statute. Defendant Tommy Edelin has not provided any legal authority showing that the notice provided is constitutionally insufficient. There is authority, however, which indicates that the Constitution is not offended even where a capital defendant does not receive pretrial notice of the aggravating circumstances upon which the government will rely. *See Clark v. Dugger,* 834 F.2d 1561, 1566 (11th Cir.1987), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988).

Defendant Tommy Edelin's reliance on *Lankford v. Idaho* for notice of aggravating factors is misplaced. 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991). The prosecution in that case did not seek the death penalty, the defendant did not prepare his defense with the knowledge any part of the justice system contemplated the imposition of the death penalty. At sentencing, the trial judge decided to impose the death penalty. In that case, the Supreme Court found that the notice to the defendant was inadequate. The lack of notice in *Lankford* is a far cry from the process defendant Tommy Edelin complains of here. The notice provided by the government in this case is constitutionally sufficient in that it sets forth the aggravating factors that the government intends to prove. This meets the requirements of the statute. There is no legal justification for requiring the government to provide more extensive discovery to defendant Tommy Edelin with regard to aggravators.

Notice to the defendant in some form is required under the Constitution and various case law. Notice, however, is not so broad as to require that the government endanger the safety of its cooperating witnesses nor other individuals; nor is notice in this context so extensive as to mandate that the government go beyond the limitations established by Congress in the Federal Rules of Criminal Procedure. Defendant Tommy Edelin's Motion for Disclosure of Evidence to be Used as Aggravators is hereby DENIED.

### C. Motion by defendant Tommy Edelin for Disclosure of Brady Information Relevant to Notice of Intent to Seek the Death Penalty [306]

Defendant Tommy Edelin's Motion for Disclosure of *Brady* Information Relevant to Notice of Intent to Seek the Death Penalty requests the same type of information discussed in the Tommy Edelin's requests for discovery, Section IV(A), *supra,* and in the Court's analysis of the Omnibus Motion for *Brady/Giglio* evidence discussed *supra* Section IV(D). The government has asserted that all evidence

covered by *Brady* and *Giglio* has been disclosed to the defendants. The government further indicates that the scope of the disclosure has been such that the defendants are actually in a better position than they would be if the government had merely complied with Rule 16, because the government attorneys have taken time to go over the evidence with the defense and have attempted to explain the relevance of the evidence and how some of it will be used at trial. Fed.R.Crim.P. 16. The only evidence that should be turned over under *Brady* and *Giglio* that has not yet been disclosed to the defendants is that evidence that if disclosed would place in jeopardy the safety of witnesses or other persons. Given the finding of dangerousness that this Court has made, *see supra* Section II, and given the statutory provisions of 18 U.S.C. § 3432, it is clear that said evidence need not be disclosed to the defendants at this time. It will be provided to the defendants with enough anticipation for them to use disculpatory evidence at trial, and for impeachment and other purposes.

Defendant Tommy Edelin's Motion for Disclosure of *Brady* Information Relevant to Notice of Intent to Seek the Death Penalty is hereby DENIED.

## VI. Motion by Government for Empaneling an Anonymous Jury

■ The Motion by the government for Empaneling an Anonymous Jury is decided on many of the same grounds as the decision by this Court to delay the production of witness names. *See* Section III(A) *supra*. The Court has discretion under 18 U.S.C. § 3432 to withhold the names of the veniremen and witnesses in a capital case if "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." The non-capital defendants can not even claim the protection of this statute, as it applies only to capital defendants. *See United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir.1998), *cert. denied*, 525

U.S. 1088, 119 S.Ct. 840, 142 L.Ed.2d 695 (1999) (stating that where the government announces that the death penalty will not be sought against a defendant, defendant is not entitled to protections of death penalty statutes such as 18 U.S.C. § 3432).

■ The additional analysis established in prior cases in the Circuit Court of Appeals for the District of Columbia also supports the decision of this Court to empanel an anonymous jury in this case. *United States v. Edmond*, 52 F.3d 1080 (D.C.Cir.1995), *cert. denied*, 516 U.S. 998, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995); *United States v. Wilson*, 160 F.3d 732 (D.C.Cir.1998). The court in *Edmond* very carefully established a list of factors that should be considered by district courts when deciding whether an anonymous jury should be empaneled. The Court will now address those factors. "[T]he court should not order the empaneling of an anonymous jury without (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Edmond*, 52 F.3d at 1090, *citing United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir.1991), *cert. denied*, 505 U.S. 1220, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1991).

The finding of dangerousness in Section II, *supra*, clearly establishes that there is reason to believe the jury needs protection. The defendants have shown that they are willing to interfere with the judicial process. The finding of probable cause by the grand jury and the proffers by the government of other actions taken by the defendants and others acting on their behalf to interfere with the judicial process and to threaten witnesses indicate that the jury would not be immune to similar interference and threats. There is a very real concern, related to this case, that the defendants or someone acting on their behalf will engage in violent activity against potential witnesses or jurors. The

Court, cognizant of the alleged actions of the defendants as part of a drug conspiracy that resorted to violence in furtherance of the conspiracy, will take measured steps to protect the safety of the participants in the judicial process.

The Court fully intends to take whatever precautions possible to minimize the prejudicial effects on the defendants of having an anonymous jury. The use of a questionnaire in the voir dire process, along with extensive questioning of the prospective jurors on their backgrounds, will overcome a large number of the defendants' concerns. In addition, the Court will be careful to provide a neutral explanation to the jurors regarding their anonymity and other precautionary measures.

The Circuit Court of Appeals for this Circuit has held that some combination of the following five factors leads to the conclusion that an anonymous jury is proper. "(1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment." *Edmond*, 52 F.3d at 1091, *quoting United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir.1994).

In this case, the indictment alleges that the defendants have been involved in a large-scale drug conspiracy, and a RICO conspiracy. The organization alleged certainly qualifies as organized crime, though it may fall short of the intricacies of the mafia. The incidents alleged in the indictment clearly show that the alleged conspiracy and its members had the capacity to harm jurors. The defendants are alleged to have participated in the murder and the attempted murder of witnesses, other crucial participants in the judicial process. The defendants' alleged willingness to in-

terfere with witnesses could easily translate into a willingness to interfere with jurors.

The fourth factor is clearly present in this case. One of the defendants faces the potential imposition of the death penalty, while the other five face life in prison without parole. All of the defendants also face substantial monetary penalties. Obviously the defendants would have an incentive to influence jurors. Finally, the likelihood for extensive publicity in this case is great. There has already been publicity with regards to this case, in particular, to defendant Tommy Edelin. This publicity, however, will pale in comparison with the likely publicity that will result from the first death penalty case to go to trial in the District of Columbia in over forty years. The decision by the Attorney General to seek the death penalty in this case will focus a great deal of attention on a variety of issues, including some of the issues raised by defendant Tommy Edelin in some of his Motions before this Court. The potential for media coverage and protestors against the death penalty only increases the need for precautionary measures to be taken to protect the anonymity and safety of the jurors.

■ Contrary to the arguments of the defendants in this case, the Court need not find that the defendants have engaged in jury tampering in a prior case. *Edmond*, 52 F.3d at 1091. The Court may use the indictment as the basis for its decision to empanel an anonymous jury. *Id.* The indictment in this case supports what a combination of the indictment and *in camera* submissions did in *Edmond*. *Id.* at 1091–92. The indictment in this case establishes the willingness of the defendants to interfere in the judicial process, as well as their ability to do so, the foundation of the decision of this Court to empanel an anonymous jury. On the basis of the strength of the indictment, the Court does not find it necessary to request an *in camera* submission by the government of evidence related to the potential danger to the jurors.

██ The defendants are concerned that the use of an anonymous jury will prevent them from being considered innocent until proven guilty, as is their right. The Circuit Court of Appeals for the District of Columbia established in *Edmond* that the repetition of the instruction to the jury that the defendants are considered innocent until proven guilty would cure any potential disadvantage to the defendants. It is assumed that jurors will follow their instructions, and this will help to protect the rights of the defendants. The Court will further instruct the jury that juror anonymity is not unusual and that other precautions, such as a U.S. Marshal escort, are being taken to ensure a fair trial for the government and the defendants.

The Supreme Court has repeatedly held that juries are assumed to follow their instructions, the Court revisited this topic most recently in *Marshall v. Lonberger* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). "[T]he crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because a jury was improperly instructed." *Marshall v. Lonberger*, 459 U.S. 422, 428 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Marshall v. Lonberger* also stands for the proposition that jurors are presumed to follow their instructions in capital cases. *See id.* The jurors are presumed capable of following the instructions of this Court on many matters, including the presumption of innocence of the defendants. This will not change because the jurors will assemble elsewhere and be escorted to the Court by a United States Marshal.

**VII. Motion by defendant Tommy Edelin for Advance Determination of Conspiracy and Supporting Authority [314]**

██ Defendant Tommy Edelin, in his request for an advance determination of conspiracy, is essentially requesting a mini-trial prior to the trial in this case. A demonstration of the existence of the RICO conspiracy and enterprise would require a rendition of the entire case, as every piece of evidence relates to the enterprise. The Court does not find that a hearing to determine whether a conspiracy existed would be proper in a case of this nature. Such a hearing would be lengthy, further delaying the trial in this case and placing an unreasonable burden on the government. Furthermore, the hearing that defendant Tommy Edelin requests would jeopardize the safety of cooperating witnesses and other persons.

██ The case law of this Circuit upholds the practice of deferring the determination of a defense motion if that motion requires a pretrial "deciding [of] issues of fact that are inevitably bound up with evidence about the alleged offense itself." *United States v. Wilson*, 26 F.3d 142, 159 (D.C.Cir.1994), *cert. denied*, 514 U.S. 1051, 115 S.Ct. 1430, 131 L.Ed.2d 311 (1995). More to the point of defendant Tommy Edelin's Motion, the D.C. Circuit Court of Appeals has held that the pretrial determination of a conspiracy, in order to decide whether the statements of co-conspirators could be admissible at trial as an exception to the hearsay rule, is unnecessary. "As a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators 'subject to connection[.]'" *See United States v. Gantt*, 617 F.2d 831, 845 (D.C.Cir.1980). To admit the statements of co-conspirators, the government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy. *United States v. Beckham*, 968 F.2d 47, 51–52 (D.C.Cir.1992) (*citing Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). A hearing to

make an advance determination of conspiracy is unnecessary for the Court's determination by a preponderance of the evidence that a conspiracy existed.

Defendant Tommy Edelin's request for an advance determination of conspiracy is hereby DENIED.

## VIII. Motion by defendant Earl Edelin to Suppress Tangible Evidence [295]

■ After consideration of the Motion filed by defendant Earl Edelin and the Opposition filed by the government, the Court finds that there was probable cause to support the three search warrants defendant Earl Edelin contends are deficient. The affidavits do establish probable cause sufficient to support the warrants. The affidavits in this case meet the test established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court has held that the test for determining if an informant-based affidavit establishes probable cause is

"whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 230, 103 S.Ct. 2317.

That test has been met in this case. The Circuit Court of Appeals for the District of Columbia has determined that courts should look to a variety of factors, such as whether the informants have proven "credible in other instances," *United States v. Laws*, 808 F.2d 92, 100 (D.C.Cir. 1986), and whether there is corroboration of the facts by the police. *Illinois v. Gates*, 462 U.S. at 241–42, 103 S.Ct. 2317; *United States v. Vaughn*, 830 F.2d 1185, 1187 (D.C.Cir.1987). Other courts have held that the trial court must examine the facts included in the supporting affidavits in a practical, commonsense fashion, and that the court should accord "considerable deference" to a magistrate's determination

of probable cause. *United States v. Feliz*, 182 F.3d 82, 85 (1st Cir.1999).

The informants used for the affidavits were reliable, they had previously provided reliable information about narcotics and firearms offenses, and the information provided on previous occasions had never proved inaccurate. These were "trustworthy individual[s] who ha[ve] worked with the police and consistently provided accurate information." *United States v. Watts*, 540 F.2d 1093, 1098 (D.C.Cir.1976).

■ In determining whether the information used to support the affidavits was stale in the eyes of the law, it is necessary to look at other cases with similar charges and see what other courts have determined to be "stale" in an ongoing conspiracy to distribute drugs. Other courts have determined that when the evidence sought is of a type that would be maintained after the criminal activity ceased, then older information can still be considered reliable when used to obtain a search warrant. *See United States v. Rowell*, 903 F.2d 899, 903 (2nd Cir.1990) (finding eighteen month old information reliable because evidence related to a drug distribution business); *United States v. LaMorte*, 744 F.Supp. 573, 575 (S.D.N.Y.1990) (holding three and one-half years not too distant where evidence sought was of a massive criminal enterprise and was of a type that would be maintained long after criminal activity ceased); *United States v. Glass Menagerie, Inc.*, 721 F.Supp. 54, 58–59 (S.D.N.Y. 1989) (determining that two and one-half year old information was reliable when evidence sought was of a narcotics paraphernalia manufacturing business). Furthermore, the affidavit submitted to support the warrant for the search of the Recreation Center included updated information corroborating the less recent evidence of narcotics trafficking. *See United States v. Butler*, 102 F.3d 1191, 1198 (11th Cir.1997) (finding information two years old not stale when additional information

updated and substantiated older information).

The government's showing of the reliability of the informants, included in the affidavits, and the case law indicating that the information was not legally stale, supports this Court's decision. Defendant Earl Edelin's Motion to Suppress Tangible Evidence is hereby DENIED.

## IX. Presentation of the Prosecution's Case-in-chief

### A. Motion by Government to Recall Witnesses During its Case-in-chief

■ The government's Motion to Recall Witnesses During its Case-in-chief seems to be the best way of providing a clear and orderly trial for the defendants and the prosecution. In order to aid the jury's understanding of the evidence, it is preferable that the evidence be presented in chronological order. While this necessitates that witnesses be recalled during the case-in-chief, there does not appear to be any detrimental effect on the defendants, indeed, it will be beneficial for the defendants if the jury has a greater understanding of the case and the evidence presented by the government.

The Court, therefore, exercises its discretion, pursuant to Federal Rule of Evidence 611(a) to permit the government to present its case in chronological order. This will allow witnesses to testify about specific incidents, and then be recalled to testify about other specific incidents that may have occurred at a later date. If each event is presented by the government to the jury in chronological order, along with the supporting evidence, it will be easier for the jury to understand the case as a whole.

Other courts hearing cases involving complex conspiracies or activities occurring over a long period of time have approved of the practice of recalling witnesses to testify to discrete incidents. *See United States v. DeLuna,* 763 F.2d 897 (8th Cir.) *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Butera,* 677 F.2d 1376, 1381 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Jackson,* 549 F.2d 517, 528–29 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The D.C. Circuit Court of Appeals has recognized the legitimacy of a similar practice in *United States v. Graham,* 83 F.3d 1466, 1474–75 (D.C.Cir.1996), *cert. denied,* 519 U.S. 1132, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997).

Therefore, because Federal Rule of Evidence 611(a) authorizes the Court to control the order of interrogation and the presentation of evidence in order to ascertain the truth, avoid inefficient waste of court time, and protect witnesses from harassment, the Court hereby GRANTS the government's Motion to Recall Witnesses During its Case-in-chief.

### B. Motion by defendant Tommy Edelin to Order the Government to Declare the Presentation Order of its Case-in-chief before Voir Dire [315–2]

The government, in its Motion to Recall Witnesses, has made it clear that it plans to present its Case-in-chief in chronological order, the Court has granted the government's Motion. The Motion by defendant Tommy Edelin is therefore DENIED. Further disclosure by the government regarding its presentation of its case-in-chief is not required.

## X. Other Discovery Motions

### A. Motion by defendant Tommy Edelin for Fifth and Sixth Amendment Notice [301–2]

The evidence requested by defendant Tommy Edelin in this Motion is substantially similar to the evidence requested by defendant Tommy Edelin in other motions. The assurances of the government that the requirements of the law will be complied with in connection with the disclosure of information to defendant Tommy Edelin are sufficient for this Court, barring some

indication by defendant Tommy Edelin that the government is not fulfilling its obligations under the Constitution, statute, the cases cited in this opinion, and the orders of this Court. Disclosure of certain materials is obviously more limited, due to the nature of the offenses alleged, the finding of dangerousness by this Court, supported by the probable cause determination of the grand jury in the indictment and proffers of additional evidence by the government. This limitation on disclosure is consistent with the Fifth and Sixth Amendments to the Constitution.

Defendant Tommy Edelin's Motion is DENIED.

### B. Motion by defendant Tommy Edelin for Government Agents to Retain Rough Notes [303]

This Motion is hereby DENIED. The government has already requested that all agents preserve their rough notes in this case.

### C. Motion by defendant Tommy Edelin for Notice of Government's Intention to Use Residual Hearsay Exception Under Rule 807[307]

Defendant Tommy Edelin's Motion for Notice of Government's Intention to Use Residual Hearsay Exception Under Rule 807 of the Federal Rules of Evidence is hereby DENIED. The government and defendant Tommy Edelin have traded notice that each will be obligated to follow the requirements of Federal Rule of Evidence 807, the Court does not need to take any action with regards to this Motion.

### D. Motion by defendant Marwin Mosley for Disclosure Pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence [279–1], joined by defendant Earl Edelin [297–1]; Motion by defendant Bryan Bostick for Disclosure of Government's Intention to Introduce Rule 404(b) Evidence at Trial [283]

■ The government in this case represents that there is no 404(b) evidence as to Mr. Mosley. Defendant Mosley nevertheless requests disclosure of any other crimes evidence involving his co-defendants or co-conspirators. Federal Rule of Evidence 404(b) does not provide for the disclosure of other crimes evidence with regards to anyone other than the "accused." FED. R. EVID. 404(B). Even if Mosley did have standing to request this information, the definition of "other crimes evidence" is murky in a RICO and drug distribution conspiracy case. Evidence of other crimes related to the RICO enterprise and drug conspiracy charged does not come within the definition of Rule 404(b). Rather, evidence of criminal wrongdoing that does not relate to specific dates or incidents charged in the indictment could be independently admissible as direct proof of the charged offenses. This is true if the evidence is of acts which are "inextricably intertwined" with a charged crime. *United States v. Badru*, 97 F.3d 1471, 1474–75(D.C.Cir.1996), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1700, 137 L.Ed.2d 825 (1997); *United States v. Allen*, 960 F.2d 1055, 1058 (D.C.Cir.), *cert. denied*, 506 U.S. 881, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). In a case such as this one where the crime charged is a conspiracy, then Rule 404(b) may not apply because the "other crimes evidence" may be direct evidence of the conspiracy itself. *See Badru*, 97 F.3d at 1475 ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime."); *United States v. Thai*, 29 F.3d 785, 812–13 (2d Cir.) (finding that evidence of uncharged crimes admitted in RICO trial was not 404(b) evidence because it was independently admissible as crimes in furtherance of the RICO conspiracy), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994). Drug dealing is not considered as a separate criminal activity, instead, dealing is considered part of the conspiracy that defendant Mosley is charged with, although it is not listed sepa-

rately in the indictment as an overt act. The government has informed the Court and the defendants that if any of the evidence the government intends to elicit falls outside the parameters of evidence of the conspiracy, the government will raise the matter preliminarily at trial.

The analysis above applies to defendants Mosley's and Bostick's Motion for Rule 404(b) Evidence. For the above reasons, defendant Bostick's Motion is hereby DE-NIED. Earl Edelin's request for 404(b) evidence is similarly DENIED. The government asserts that all Federal Rule of Evidence 609 evidence has been disclosed. Defendants Mosley and Earl Edelin requests for Rule 609 evidence are DE-NIED.

### E. Motion by defendant Tommy Edelin to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant [312]

This Motion is hereby DENIED in accordance with the analysis given in Section IV(A), *supra*, in a similar motion filed by this defendant.

### F. Motion by defendant Tommy Edelin to Compel Disclosure of Evidence Subject to Suppression under the Federal Rules of Criminal Procedure 12(b)(3) [313]

The Motion of the defendant is hereby DENIED. The government has represented that Rule 12(d)(2) has already been complied with, therefore the Motion regarding evidence subject to suppression under Fed.R.Crim.P. 12(b)(3) is moot.

### G. Motion by defendant Tommy Edelin for an Exhibit List [315-1]

Defendant Tommy Edelin's Motion for an Exhibit List is DENIED. Information regarding various witnesses will be provided on the Thursday prior to the testimony of each witness, the government will provide the *Jencks/Giglio* materials at that time. This will assist the defendants in knowing what to bring to court the following week. Further disclosures with regards to an exhibit list are not required.

### XI. Adoption of Motions of Co-Defendants

### A. Defendant Earl Edelin's Motion to Adopt the Motions of Co-Defendants [297-1]

Defendant Earl Edelin's Motion to adopt the Motions of defendant Marwin Mosley, for Disclosure Pursuant to Rule 404(b) and 609 of the Federal Rules of Evidence and of defendant Shelton Marbury, for his Omnibus Motion for Production of *Brady/Giglio* Materials is hereby GRANTED. The two motions joined by defendant Earl Edelin are discussed *supra* Sections X(D) and IV(D), both motions were DENIED by the Court.

### B. Defendant Earl Edelin's Motion to Join Defendant Mosley's Opposition to Empaneling an Anonymous Jury, to Providing the United States Marshal's Service Escort and to Delaying Release of Witness Names [ ], Defendant Bryan Bostick's Motion to Join and Adopt Co-defendant Tommy Edelin's Motion for Disclosure of Confidential Informants, Motion for Production of Pretrial Statements of Persons Who Will Not be Called as Witnesses at Trial, Motion for Disclosure of Statements of Co-Defendants and Co-conspirators, Motion for Notice of Government's Intent to Introduce Statements Under the Residual Hearsay Rule, and Motion for Pretrial Determination of Existence of Conspiracy [344-1], Defendant Bryan Bostick's Motion to Join and Adopt Co-defendant Marbury's Motion for Disclosure of Brady/Giglio Materials [282-1]

These Motions to Join Motions by Co-defendants are hereby GRANTED. The underlying motions the defendants sought

to join were DENIED in the analysis provided above. *See supra* Sections VI, III(D), III(C), III(E), X(C), VII, and IV(D), respectively.

### C. Defendant Bryan Bostick's Motion to Join and Adopt Co–Defendant Earl Edelin's Motion to Reconsider Motion for Discovery [194–1]

This Motion by defendant Bostick is hereby DENIED. Earl Edelin's Motion to Reconsider Motion for Discovery was denied by an Order of this Court on January 24, 2000.

### D. Defendant Tommy Edelin's Motion to Adopt, Join and Conform Motions [357–1]

Defendant Tommy Edelin's Motion is hereby GRANTED, but only to the extent that he requests to adopt, join and conform to specific motions by co-defendants. Those motions are as follows: Marwin Mosley's Motion in Opposition to Empaneling an Anonymous Jury, Motion for Disclosure of Rule 404(B) Evidence, and Motion for Disclosure of Exculpatory Evidence.

Insofar as defendant Tommy Edelin's attorneys mistakenly included the names of Motions that had not been filed by any defendant other than defendant Tommy Edelin himself in this case, such as the Motion for Pretrial Determination of the Admissibility of Tape Recorded Conversations, the Motion for Preliminary Determination of Conspiracy and Pretrial Ruling on the Admissibility of Co-conspirators' Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E), and the Motion for Pretrial Disclosure of *Jencks Act,* Giglio and Roviaro Information, these motions are not joined. This Court will not determine which of the other motions the Motion to Adopt, Join and Conform referred to when it mentions "any motion to suppress ... evidence ...." and "[a]ny additional pretrial motions filed on behalf of [co-defendants] which do not seek relief inconsistent with relief already sought [by defendant Tommy Edelin]." The Court requested in open court a clarification of this Motion by the defense attorneys for defendant Tommy Edelin, and the attorneys indicated that they only sought to join the motions that were specifically named. Therefore, the Motion is DENIED to the extent that it refers ambiguously to motions filed by co-defendants.

The underlying Motions defendant Tommy Edelin sought to join were DENIED by this Court, *supra* Sections VI, X(D), and IV(D).

## XII. Conclusion

The Court has established that further discovery is unwarranted, aside from the anticipated disclosures by the government of materials that have been withheld because of concerns with the safety of witnesses, informants, or other persons. The government has indicated that it will comply with its discovery obligations under *Brady* and Rule 16 of the Federal Rules of Criminal Procedure, to the extent that this information has not been previously disclosed. The government's Motion to delay the production of witness names has been granted, due to the finding of dangerousness of the defendants. Finally, the Court has determined that an anonymous jury is warranted, given the circumstances of this case. A separate order shall issue with details regarding the manner of maintaining the anonymity of the jurors.

SO ORDERED.