UNITED STATES of America,

v.

Tommy EDELIN, Defendant.

Crim. No. 98–264(RCL).

United States District Court,
District of Columbia.

Sept. 24, 2001.

Pleasant S. Brodnax, James W. Rudasill, Jr., Washington, D.C., William Kanwisher, Baltimore, MD, for Tommy Edelin.

Stephen Pfleger, Assistant United States Attorney, Paul Quander, Assistant United States Attorney, William M. Sullivan, Assistant United States Attorney, Washington, DC, for the Government.

*MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

    Upon consideration of the Government's Motion in Limine to Preclude Defense Evidence and Argument Concerning the Bureau of Prisons' Ability to Incapacitate Tommy Edelin from Inflicting Future Harm, defendant Tommy Edelin's Opposition thereto, hearings held on September 18 and 20, 2001, and the relevant analysis of other federal and state courts, the Court hereby GRANTS the Government's Mo-

tion and will preclude argument and evidence, expert or lay, which concerns the Bureau of Prisons' ability to house, control, or confine defendant Edelin during his incarceration. In addition, defendant Edelin's Motion for Discovery for Penalty Phase is hereby DENIED.

## I. Background

Defendant Tommy Edelin has been charged in the Superseding Indictment with intentional killings while engaging in, and working in furtherance of, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(e). On June 30, 2000, the Government filed a Notice of Intent to Seek the Death Penalty, in accordance with Section 848(h), and stated therein its intent to seek the death penalty if the defendant is convicted of Counts Twelve, Fourteen, or Sixteen of the Superseding Indictment. The Government has also provided the defendant with a specific list of statutory and non-statutory aggravating factors it will seek to prove as the basis for the imposition of the death penalty.

The Government subsequently served notice of its intent to withdraw "Future Dangerousness of the Defendant" as a non-statutory aggravating factor to be considered by the jury in any penalty phase of this case. Defendant Edelin intends to call three expert witnesses during the penalty phase. The first is Dolores Andrews, a social worker. Her testimony is not contested by the Government. The second expert is Mark Cunningham, a psychologist. It appears that defendant Edelin is proffering Mr. Cunningham to provide testimony about generalized risk assessment by the Bureau of Prisons, statistical incidence of violent acts within the Bureau of Prisons' system, and confinement classifications and security levels in the Bureau of Prisons. The third expert is James Aiken, whose proffered testimony will detail the type of security procedures and classifications that would be applied to a defendant like Tommy Edelin were he incarcerated within the Bureau of Prisons system. Defendant Edelin has filed a Motion for Discovery for Penalty Phase to compel the Government to disclose various materials to prepare Mr. Cunningham to testify: videos of inmates fighting at the BOP facility at Florence (in order to prepare Mr. Cunningham to testify about levels of force prison officials use in order to subdue convicts), base rate data about the violence incidence rates for different prison populations, statistical information about the frequency of violent incidents at the BOP facility at Florence, and other violence risk assessment information compiled by the Bureau of Prisons. The government's instant motion is to preclude the defendant from introducing any expert testimony about the Bureau of Prisons' ability to prevent defendant Edelin from committing any future criminal acts.

## II. Sentencing Scheme Under the Anti–Drug Abuse and Death Penalty Act

This Court has previously considered the constitutionality of the Anti–Drug Abuse Act and held the sentencing scheme established therein constitutional. *See United States v. Edelin,* 134 F.Supp.2d 59 (D.D.C.2001).

The statute establishes successive steps to narrow eligibility for the death penalty. In order for defendant Edelin to be eligible for the death penalty, he must be convicted of committing a murder in furtherance of a continuing criminal enterprise under 21 U.S.C. § 848(e). In addition, the Government must prove beyond a reasonable doubt two aggravating factors: that the murder was committed with one of the intent factors listed in Section

848(n)(1), and any other factor set forth in Sections 848(n)(2) through (n)(12).

Once the jury finds unanimously that the two aggravating factors have been proven beyond a reasonable doubt, the jury may then consider any other statutory or non-statutory aggravating factors and the mitigating factors produced by the defendant. The aggravating factors must be proven beyond a reasonable doubt; the mitigating factors presented by the defense need only be found by a preponderance of the evidence, and any member of the jury who finds the existence of a mitigating factor may consider that factor when making the final determination.

Before any evidence may be presented before the jury, however, the trial court must make a determination that the evidence is admissible in the penalty phase. Section 848 sets out broad, general rules of evidentiary admissibility. The statute notes that trial transcripts and exhibits may be presented, and, in addition, releases the penalty phase proceedings from the traditional rules of evidence. Subsection (j) reads, "Any other information ... may be presented ..., regardless of its admissibility under the rules governing admission of evidence at criminal trials." The trial judge, however, has discretion to determine whether the information may be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Section 848 also governs the substance of the information that is admissible. Information is admissible if it relates to any of the aggravating or mitigating factors enumerated in the statute, and is brought forward in an attempt to prove the existence of that factor. Information is also admissible if it is presented to rebut the existence of a factor, once the opposing party has made the existence of that factor

an issue. In sum, the Government may present evidence to prove the existence of aggravating factors, the defendant may present evidence to prove the existence of mitigating factors, and each party may present evidence to rebut the assertions and proof of the other. The essence of this scheme is to protect the defendant's Fifth Amendment Due Process right by ensuring that the defendant has the ability to rebut any aggravating factors asserted by the Government. *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

### III. Admissibility of Information Concerning the Bureau of Prisons' Ability to Incapacitate Tommy Edelin from Inflicting Future Harm

The Government seeks to preclude any evidence of the Bureau of Prisons' ability to incapacitate Tommy Edelin from inflicting future harm. This motion would limit the testimony from Mr. Cunningham and Mr. Aiken, and defendant Edelin's motion for discovery of preparatory Bureau of Prisons materials for Mr. Cunningham.

The Government first argues that this evidence is not admissible as "relating" to any mitigating factor. The Government also asserts that this evidence is not admissible to rebut any aggravating factor, because the Government has withdrawn the aggravating factor of "future dangerousness" from jury consideration. This Court finds that despite argument by the defendant, the Government's motion is GRANTED.

### A. Bureau of Prisons Information is not admissible as evidence of mitigation.

It is well settled that a defendant's character is a proper basis for presenting mitigating evidence. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438

U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

The Supreme Court has held that a defendant's past behavior in jail was relevant to the defendant's character and his probable future conduct, and was therefore admissible to prove mitigation. *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). In *Skipper*, the Court held that "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating." *Id.* at 5, 106 S.Ct. 1669. To do otherwise would violate the defendant's Eighth Amendment right to put forth evidence of "any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentences less than death." *Id.* at 4, 106 S.Ct. 1669. Despite this broad language, this evidence proffered by defendant Edelin is clearly distinguishable from that at issue in *Skipper*. The evidence in *Skipper* was the specific history and behavior of the defendant; indeed, as mandated by *Skipper*, the Government here has indicated that they have no objection to defendant Edelin presenting evidence about his behavior in jail. The evidence now proffered by defendant Edelin has no relation to the specific circumstances of any alleged offense or any aspect of the defendant's character or record.

In *United States v. Johnson*, 223 F.3d 665 (2000), the United States Court of Appeals for the Seventh Circuit faced a virtually identical issue. In that case, the defendant presented evidence about the Bureau of Prisons' ability to prevent the defendant from committing future criminal acts. That court held that it was not an abuse of discretion for the trial court to rule that the probative value of the evidence was not outweighed by the danger of confusing, misleading, or prejudicing the

jury. *Id.* at 674. Despite this holding, the court noted that the trial court probably should not have permitted the defendant to enter the evidence because it was of a systemic and general nature, and was therefore more suitable for a legislative argument against the death penalty in general. *Id.* at 674–75. The court noted that "[a] mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general." *Id.* at 675 (emphasis in original); *see also Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (sentencer must make "an individualized assessment of the appropriateness of the death penalty," and should treat defendant as a "uniquely individual human being" (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))).

This Court is in accord with the reasoning of *Johnson* and *Skipper*. The proffered testimony of Mr. Cunningham and Mr. Aiken has no relation to the specific charges against Tommy Edelin, his character, or any other proper mitigation factor, would provide no basis for the jury to impose a sentence less than death, and is therefore inadmissible as mitigation evidence.

## B. Bureau of Prisons Information Is Not Admissible as Rebuttal to the Government's Case–in–Chief.

█ Despite the government's withdrawal of "future dangerousness" as an aggravating factor to be considered by the jury during the penalty phase, defendant Edelin argues that the government has, in fact, put future dangerousness at issue by presenting evidence about four violent acts that defendant Edelin allegedly solicited from jail. *See Def. Tommy Edelin's Resp. to the Government's Mot. in Limine to Preclude Defense Evidence and Argument*

*Concerning the Bureau of Prisons' Ability to Incapacitate Tommy Edelin from Inflicting Future Harm,* at 1–2. In addition, defendant Edelin cites argument by the Government that defendant Edelin was "manipulative" and could "orchestrate" criminal activity. *Id.* On these bases, defendant Edelin argues that the Government has *de facto* put his future dangerousness at issue, and the jury will consider the defendant's future dangerousness despite the lack of any court instruction to that effect. Therefore, defendant Edelin claims that he should be permitted to rebut the Government's implied arguments by presenting evidence and expert testimony about the Bureau of Prisons' ability to effectively protect society from any future criminal acts by defendant Edelin.

Although the law in this area is not firmly settled and there is certainly ample legal support that has been marshaled by both the Government and defendant Edelin, this Court finds that the Bureau of Prisons' evidence is not admissible as rebuttal evidence.

A capital defendant must be afforded the opportunity to deny or explain information that is presented to the sentencer; a denial of that opportunity denies Fifth Amendment Due Process protection. *See Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197 (1977). If the government had put the issue of future dangerousness squarely before the jury through its evidentiary presentation or its argument, defendant Edelin would be entitled to rebut that assertion. The Supreme Court held in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that when the Government puts the issue of future dangerousness before the jury as a sentencing consideration, and the only sentencing alternative to death is life imprisonment without possibility of parole, the jury must be instructed that the only

alternative to death is life imprisonment without possibility of parole. This instruction, the Court held, is necessary to protect the Fifth Amendment due process right of the defendant to rebut information before the sentencer. *See id.; see also Gardner,* 430 U.S. at 362, 97 S.Ct. 1197 (holding that Fifth Amendment Due Process prevents execution of a defendant "on the basis of information which he had no opportunity to deny or explain"). Defendant Edelin argues that *Simmons* should be extended in this instance to permit him to rebut *the implied suggestion* of future dangerousness with evidence about the Bureau of Prisons' ability to prevent his participation in any future criminal activity.

Defendant Edelin further argues that *State v. Kelly,* 343 S.C. 350, 540 S.E.2d 851 (2001), *cert. granted,* —— U.S. ——, 121 S.Ct. 2548, 150 L.Ed.2d 716 (2001), supports the admission of Bureau of Prisons' evidence as rebuttal. In that case, the Supreme Court of South Carolina held that a defendant was not entitled to a *Simmons* instruction because the government had not asserted "future dangerousness" as a sentencing factor for the jury to consider. *See id.* at 359–60. During the penalty phase, the Government presented evidence that the defendant had attempted to escape from the jail, had possessed a weapon in jail, and other instances of misconduct in jail. *See id.* In the closing arguments *for the penalty phase,* the Government argued that "murderers will be murderers" and that defendant's lack of mental disability might cause jurors to ask, "Doesn't that make somebody a little more dangerous?" *See Petitioner's Brief* at 18, *State v. Kelly,* 343 S.C. 350, 540 S.E.2d 851 (2001), *cert. granted,* —— U.S. ——, 121 S.Ct. 2548, 150 L.Ed.2d 716 (2001). Certiorari was granted in that case to consider whether "future dangerousness" had been put in issue by Government's penalty

phase presentation of evidence and closing argument, and whether the trial court's subsequent refusal to give a *Simmons* instruction to the jury was appropriate.

This Court finds, however, that defendant's reliance on *Simmons* and *Kelly* fails for two reasons. First, the Government has *not* put future dangerousness at issue in this case. The Government has represented to this Court that they will assiduously avoid any argument that may refer to defendant Edelin as a future danger to society. The Government's evidence of defendant Edelin's alleged ability to solicit murders from prison may lead to some possible conclusion in a juror's mind about the potential future dangerousness of defendant Edelin, but it is merely that—one of many possible conclusions to be drawn from the evidence. If the Court were to hold that defendant Edelin had the right to rebut any *possible* conclusion that might be drawn from the evidence, the penalty phase of any capital case would be an endless and discombobulated evidentiary morass. Therefore, this evidence does not serve to rebut any aggravating factor asserted by the Government, and in this situation, the probative value of the evidence is substantially outweighed by the danger of confusion of the issues or misleading the jury. This Court does note, however, that if the Government's evidence and argument rose to such a level that defendant Edelin's "future dangerousness" were an *inescapable* conclusion to be drawn by the jury, that would present the Court with a situation where defendant Edelin's right to rebut may be triggered.

Second, the requested relief that was denied and is now being appealed in *Kelly* was a *Simmons* instruction. In this case, that instruction has already been granted, and the jury has been clearly instructed that the only two possible sentences for defendant Edelin are death or life imprisonment without possibility of parole. Insofar as any possible suggestion of future dangerousness has been planted in the minds of the jurors, that concern has been allayed by the *Simmons* instruction, and will be further allayed by the lack of any instruction for the jury to consider "future dangerousness" in its sentencing deliberations.

Because the evidence from the Bureau of Prisons' is not admissible in the penalty phase either as evidence of mitigation or as evidence to rebut the Government's penalty phase case-in-chief, the Government's motion is hereby GRANTED, and defendant Edelin is precluded from presenting the proffered testimony of Mr. Cunningham and Mr. Aiken. In addition, because the Bureau of Prisons' information is not admissible, defendant Edelin's Motion for Discovery for Penalty Phase is hereby DENIED. Defendant Edelin is not precluded from presenting the testimony of Dolores Andrews, evidence of defendant Edelin's adjustment to incarceration, or other evidence relating to the defendant's character, circumstances of the offense, or any other mitigating factor enumerated in 21 U.S.C. § 848(m).

SO ORDERED.