**UNITED STATES of America,**

v.

**Francois KARAKE, et al., Defendants.**

**No. CR.A. 02–0256ESH.**

United States District Court, District of Columbia.

Sept. 10, 2003.

Wendy Leigh Wysong, U.S. Attorney's Office, Washington, DC, for U.S.

Shawn Franklin Moore, Federal Public Defender for D.C., Washington, DC, Adam Thurschwell, Cleveland, OH, Sreven R. Kiersh, Washington, DC, Reita Pauline Pendry, Charlotte, NC, Jeffrey Brian O'Toole, Julie Sippel Dietrich, O'Toole, Rothwell, Nassau & Steinbach, Washington, DC, Harry J. Trainor, Jr., Brennan, Trainor, Billman & Bennett, LLP, Upper Marlboro, MD, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

The three defendants and other unnamed co-conspirators are Hutus alleged to be members of the Liberation Army of

Rwanda. Defendants have been named in a four-count indictment charging murder and other crimes arising from a March 1999 attack on tourists visiting the Bwindi Impenetrable National Park in Uganda. Eight tourists, including two American citizens, were killed. After allegedly confessing to these crimes while in a Rwandan Repatriation Camp, defendants were brought to this country to face prosecution for charges that carry punishment by death.[1] *See* 18 U.S.C. § 2332(a)(1).

By virtue of defendants' Motions to Compel Discovery, the Court is again being asked to resolve a host of discovery disputes that have arisen between the parties. Resolution of these discovery issues is far more challenging than the typical criminal case, since the defendants face potential death sentences if convicted and defendants' counsel are confronted with obvious investigatory challenges that inhere from representing Rwandans accused of committing crimes in Uganda.

Previously, by Memorandum Opinion filed on July 7, 2003, the Court ordered the government to identify the foreign entities that have provided, or reasonably may be expected to provide or possess, information that is material to the case so that defendants could issue more meaningful letters rogatory. Thereafter, by Order dated August 14, 2003, the Court required the government to provide specific information about a Ugandan citizen who had been charged in Uganda with the same offenses, as well as investigatory leads revealed through the Rewards for Justice Program whereby the government offered money in exchange for information about the events underlying this indictment.

Now, in these Motions to Compel, defendants seek a wide variety of materials and information, some of which the government has declined to provide. It has, however, agreed to produce each defendant's statement made to United States officials in an unredacted form, and it has indicated that it will undertake to obtain any statement made by a defendant to a foreign authority. (*See* Opp. to Karake at 6 n. 8.) Given these representations, the Court is assuming that the government will use its best efforts to obtain any statements by the defendants to agents of any other government, and it therefore need not issue any further orders regarding the defendants' various requests for their own statements.

Similarly, several of defendants' other requests have become moot, in view of the government's representations that there is no responsive information. For instance, the government has confirmed the absence of any informants; it states it has no *Brady* information of the type described by defendant Bimenyimana in footnote 5 of his Motion to Compel; and it reiterates that no one made an identification of any of the defendants. (United States' Response and Opposition to Defendant Bimenyimana's Motion to Compel ["Opp. to Bimenyimana"] at 6, 9, 10.)

In addition, the government has acknowledged its discovery obligations under Fed.R.Crim.P. 16; *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). It further represented at a hearing on August 13, 2003, that it is turning over all *Brady* information with-

---

**1.** The Repatriation Camps served "to induce Hutu refugees, including soldiers-in-exile, to give up the rebel ideology and way of life, through citizenship instruction...." (Government's Response and Opposition to Defendant Karake's Motion to Compel ["Opp. to Karake"] at 2.)

in its possession, custody or control. (*See* Tr. at 53.)

■ In this regard, the Court again wishes to remind the government that it must be vigilant in ensuring that it fulfills its discovery and *Brady/Giglio* obligations. Given the charges that defendants confront, the government shall be mindful that Rule 16 establishes "the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases," Advisory Committee Note to Fed.R.Crim.P. 16, and disputes should be resolved in the defendants' favor, for "[t]he language and the spirit of the Rule are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States v. Poindexter*, 727 F.Supp. 1470, 1473 (D.D.C.1989). Similarly, the government should err on the side of disclosure when interpreting its *Brady/Giglio* obligations given the need for the utmost reliability in capital proceedings. *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).[2] Finally, it is expected that the government will continue to disclose all *Brady* information promptly.[3] In a case such as this one, it is well to remember the Supreme Court's admonition in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that, justice shall be done.

*See also Brady*, 373 U.S. at 87, 83 S.Ct. 1194 ("[S]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' ").

Applying the above-guiding principles to defendants' requests, the Court is persuaded that several categories of information

---

**2.** It is therefore expected that the government will produce any information in its possession, custody, or control, and that it will use its good faith efforts to obtain any information from foreign entities, that reflects that any oral or written statement by a defendant to any government official was the product of coercion or duress. *See United States v. Yousef*, 327 F.3d 56, 145 (2d Cir.2003).

**3.** Since a trial date has yet to be set, and no final decision has been made regarding whether the government intends to seek the death penalty, the government will not be required, at this time, to identify its witnesses or to produce *Giglio* information. The Court does not, however, agree with the government's position that, under 18 U.S.C. § 3432, it can refuse to disclose its witnesses "until very close to trial." (Opp. to Bimenyimana at

11.) In the absence of evidence of witness intimidation (which occurred in *United States v. Edelin*, 128 F.Supp.2d 23, 32 (D.D.C.2001), but has not been adduced in this case), the Court views § 3432 as establishing the minimum timetable for disclosure. It must be interpreted to permit defendants to have sufficient time to investigate and interview witnesses. In this case, given the expectation that many witnesses are located abroad, it is important for the government to recognize that the traditional three-day notice requirement will be insufficient. However, since this issue can be addressed more fully at a later date, defendants' requests for a witness list and *Giglio* information will be denied without prejudice to being renewed at a time closer to the trial date.

should be provided, and that in addition to providing information within the government's possession, custody or control, it must also use its best efforts to obtain the information from all relevant foreign entities. To the extent that the Court is requiring production, its reasoning is set forth in this Memorandum Opinion, but as to a variety of other requests, the Court has carefully considered them and will, without further explanation, deny them.[4]

## I. Death-related information.

Much of the debate between defendants and the government relates to how broadly to define the government's *Brady* obligation to produce mitigating evidence. While the government wisely does not contest the application of *Brady* at this stage of the proceedings to the statutory mitigating factors,[5] *see, e.g., United States v. Beckford,* 962 F.Supp. 804, 811 (E.D.Va. 1997); *United States v. Perez,* 222 F.Supp.2d 164, 166 (D.Conn.2002), it then proceeds to define its obligation far too narrowly. For example, addressing defendants' request for information regarding duress, the government, without support, limits its response to duress "tied to the defendants' personal experience." (Opp. to Karake at 14.) As to information regarding relative culpability of co-defendants, the government again offers a cramped reading of the statute that ex-

cludes co-conspirators who are not defendants and limits *Brady* only to information that "negat[es] [defendants'] presence or indicate[s] their lack of involvement in the acts charged." (*Id.* at 12.)

As an initial matter, in interpreting the mitigating factors enumerated in § 3592, courts have taken an expansive approach, recognizing that the enumerated factors are not exclusive and any mitigating factor may be considered by the jury. *See, e.g., Cooper,* 91 F.Supp.2d at 101; *United States v. Bin Laden,* 156 F.Supp.2d 359, 369–70 (S.D.N.Y.2001). Moreover, courts uniformly interpret "defendants" within the meaning of § 3592(a)(4) to include co-conspirators and accomplices. *See, e.g., United States v. Beckford,* 962 F.Supp. at 812–14; *United States v. Regan,* 221 F.Supp.2d 659, 660 (E.D.Va.2002). Second, this factor is not limited to evidence that demonstrates that others were responsible for the criminal conduct with which the defendants have been charged, nor is it dispositive that others who may be equally culpable may be dead or their whereabouts are unknown. Rather, as aptly stated by Judge Sand:

> The circumstance that others who are equally culpable will not be subject to the death penalty is a comparative factor which reflects a determination by Congress that it is appropriate for jurors to

---

**4.** For instance, in this jurisdiction a defendant is not entitled to statements of non-testifying co-conspirators unless they contain *Brady* information. *See, e.g., United States v. Tarantino,* 846 F.2d 1384, 1418 (D.C.Cir.1988); *United States v. Cooper,* 91 F.Supp.2d 79, 86 (D.D.C.2000).

**5.** Of relevance to the instant motions, 18 U.S.C. § 3592(a) sets forth the following mitigating factors:

> (2) Duress.—the defendant was under unusual and substantial duress, regardless of whether the duress was of such a de-

gree as to constitute a defense to the charge.

> * * * * * *

> (4) Equally culpable defendants.—Another defendant or defendants, equally culpable in the crime, will not be punished by death.

> * * * * * *

> (8) Other factors.—Other factors in the defendant's background, record, or character or *any other circumstance of the offense that mitigate against imposition of the death sentence.*

18 U.S.C. § 3592(a) (emphasis added).

consider questions of proportionality and equity when they are evaluating whether a death sentence is appropriate.

*United States v. Bin Laden,* 156 F.Supp.2d at 369.

■ Thus, the government is obligated to disclose any information that reflects that defendants are equally or less culpable than other co-conspirators, and the assertion that the government's investigation is ongoing is, without more, insufficient to overcome the need for disclosure. Obviously, this information can be disclosed to counsel subject to a protective order so as to prevent unnecessary publication of sensitive information. Therefore, the Court will grant defendant Karake's request to the extent that he seeks information that indicates that others were equally or more culpable than the defendant with respect to the planning, financing, directing, organizing or executing of the attacks which are the subject of this indictment.[6]

■ Similarly, the information requested by defendant Karake with respect to duress (*see* Request 24(b)) should be provided, since the extent to which a defendant's conduct can be attributed to or explained by actions of the leadership of the Liberation Army of Rwanda would certainly be relevant to mitigation.

## II. Information regarding defendants' extradition and other communications between the U.S. and Rwanda.

Defendants also request information regarding extradition or rendition efforts pertaining to them, and other documents concerning the "advice, assistance, requests, or any other communication between the government of the United States and the government of Rwanda" concerning their investigation and apprehension. (Def. Karake's Request 11(g).) The government demurs, stating that "[t]here was no joint venture and Rwanda was not acting as an agent of the United States," and thus, according to the government, the information is unnecessary. (Opp. to Karake at 10.) Defendants, however, suggest that United States officials acted jointly with Rwandan law enforcement officials before defendants were brought to the United States. (Def. Bimenyimana's Reply at 2–3.) Defendants are entitled to seek information to support their claim, as it is crucial to their ability to file motions to suppress defendants' statements made abroad, and may reveal mitigating evidence arising from the circumstances of their extradition.

■ A defendant may move to suppress statements made to agents of foreign governments when the conduct of foreign law enforcement officials renders them agents, or virtual agents, of United States officials. *See United States v. Maturo,* 982 F.2d 57, 61 (2d Cir.1992). For example, "statements elicited during overseas interrogation by foreign police in the absence of *Miranda* warnings must be suppressed whenever United States law enforcement agents actively participate in questioning conducted by foreign authorities." *Yousef,* 327 F.3d at 145; *see also United States v. Bagaric,* 706 F.2d 42, 69 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Bin Laden,* 132 F.Supp.2d 168, 187 (S.D.N.Y. 2001). Suppression is also required when United States officials, "despite asking no questions directly, used the foreign officials as their interrogational agents in order to circumvent the requirements of *Mi-*

---

**6.** To the extent that defendant Karake seeks additional information with respect to this issue (*see* Requests 24(c)(2), (4) and (5)), these requests are denied, since they do not appear to relate to the issue of relative culpability.

*randa." Bin Laden,* 132 F.Supp.2d at 187; *see also Yousef,* 327 F.3d at 146; *Maturo,* 982 F.2d at 61.

■ Defendants are entitled to evidence that may demonstrate cooperation between the United States and Rwandan governments sufficient to reveal an agency relationship so that they can, if appropriate, raise constitutional challenges. *See United States v. Rose,* 570 F.2d 1358, 1362 (9th Cir.1978) (courts must closely scrutinize the attendant facts to determine whether a joint venture between foreign and United States officials exists). *See also United States v. Balogun,* 971 F.Supp. 1215, 1243 (N.D.Ill.1997) (compelling the government to attempt to acquire documents related to extradition for disclosure to defendant). The government must disclose any evidence it has, or can obtain by good faith efforts, that Rwandan officials or any other foreign officials were operating as agents of the United States government, including but not limited to information that defendants were held at U.S. officials' request or were questioned at U.S. officials' direction.

■ Questionable extradition procedures of capital defendants may also give rise to mitigating circumstances to be considered during sentencing. *See Bin Laden,* 156 F.Supp.2d at 362 (allowing the jury to consider as a mitigating factor a foreign court's decision that its government erred in allowing defendant to face the death penalty in the United States). In light of the expansive approach taken towards mitigating factors discussed above, *see Coo-*

*per,* 91 F.Supp.2d at 101, the government is required to disclose any evidence that the United States government represented to any foreign government that defendants would not be subject to the death penalty upon extradition.[7]

## III. Identification of eyewitnesses to the events alleged in the indictment.

■ Defendants also request the names and current contact information of tourists, tour guides, employees, and others present in the park at the time of the attack. (Def. Bimenyimana's Mot. at 3.) Because the identification of eyewitnesses to the events is "material to preparing the defense," the Court will require the government to disclose the names and current addresses of any known or discoverable eyewitnesses. Fed. R. Crim. P. 16(a)(1)(E).

■ Evidence is material under Rule 16, whether exculpatory or inculpatory, "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall,* 132 F.3d 63, 68 (D.C.Cir.1998); *see also United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir.1993). When someone has witnessed the offense, disclosure of his or her identity "will almost always be material to the defense." *Harris v. Taylor,* 250 F.3d 613, 617 (8th Cir.2001).

---

7. The Court is not convinced that the materials defendants request are shielded by the work product privilege. Although communications requested between state or local law enforcement and the attorneys for the Government "runs close" to invading work product protection, communications between the government of the United States and the government of Rwanda are clearly not "internal government documents." *See U.S. v. Williams,* 792 F.Supp. 1120, 1132 (S.D.Ind. 1992); Fed. Rule Crim. P. 16(a)(2) (the rule "does not authorize the discovery or inspection of reports, memoranda, or other *internal government documents* made by the attorney for the government or any other government agent investigating or prosecuting the case") (emphasis added).

Compelling disclosure of the identities and contact information of eyewitnesses to this event is especially appropriate. The attacks occurred several years ago in a remote Ugandan rainforest, more than one hundred people were present, and the eyewitnesses are located throughout the world. This type of case "presents a discovery dilemma quite unlike more typical criminal proceedings in which the defense can learn the identity of [eye]witnesses through available investigative techniques." *United States v. Sims,* 637 F.2d 625, 629 (9th Cir.1980).[8]

Although the government has voiced generalized concerns about the safety of eyewitnesses to the event because "the defendants are acknowledged members of a recognized violent international terrorist organization that is still active in the areas where the individuals who defendants seek to identify still reside," it has not provided any support for this assertion. (Opp. to Bimenyimana at 11.) If the government has safety concerns about disclosing the names of particular eyewitnesses, it may file a properly-supported motion.

## IV. Identification of unindicted co-conspirators

 Finally, defendants seek the names and addresses of other co-conspirators who are "known to the Grand Jury." (Def. Bimenyimana's Mot. at 4.) Granting defendants' request for identification of co-conspirators is "entirely a matter of the sound discretion of the court." *United States v. Gotti,* 784 F.Supp. 1017, 1019 (E.D.N.Y.1992). Because defendants may have no way to identify the large number of co-conspirators involved in this incident, the Court concludes that identification of

unindicted co-conspirators is necessary to allow defendants to adequately investigate and prepare for trial and to know what acts and statements may be attributable to them under principles of vicarious liability. *See United States v. Ramirez,* 54 F.Supp.2d 25, 30 (D.D.C.1999); *U.S. v. Trie,* 21 F.Supp.2d 7, 22 (D.D.C.1998).

A separate Order accompanies this Memorandum Opinion.

### *ORDER*

This matter is before the Court on defendants Karake and Bimenyimana's motions to compel discovery. Based on the entire record and relevant case law, it is hereby

**ORDERED** that defendants' motions are **GRANTED IN PART**; and it is

**FURTHER ORDERED** that, consistent with the attached Memorandum Opinion, the government shall disclose: 1) information indicating that others were equally or more culpable than any of the defendants with respect to the planning, financing, directing, organizing and/or executing of the attacks which are the subject of this indictment (Karake Request 24(c)); 2) information that any defendant may have been acting under duress during the attacks (Karake Request 24(b)); 3) information tending to demonstrate that any foreign officials were operating as agents of the United States government during the investigation and apprehension of defendants (Karake Request 11(g)); 4) information that the United States government represented to any foreign government that defendants would not be subject to the death penalty upon extradition (Karake Request 11(g)); 5) the names and

---

**8.** In opposition to this request, the government claims that it does not have records reflecting identification and contact information of people present in Bwindi. (*See* Gov.'s Resp. to Def. Bimenyimana's Mot. at 11.) Consistent with the rest of the granted requests, the government is required to use best efforts to obtain this information.

current contact information of tourists, tour guides, employees, drivers and others present in the Bwindi Impenetrable National Park at the time of the attack (Bimenyimana Request 7); and 6) the names and current contact information of unindicted co-conspirators (Bimenyimana Request 14). It is

**FURTHER ORDERED** that the government shall use its best efforts to obtain the disclosures ordered to the extent that the information is not in its possession, custody and/or control; and it is

**FURTHER ORDERED** that the government's disclosures shall be made on or before September 29, 2003, and shall be continuously supplemented as the government acquires additional responsive information.

**SO ORDERED.**