UNITED STATES of America,

v.

Francois KARAKE, et al., Defendants.

Criminal Action No. 02–256(ESH).

United States District Court,
District of Columbia.

May 19, 2005.

Adam Thurschwell, Cleveland State University, Cleveland, OH, Shawn Franklin Moore, Robert Lewis Tucker, Federal Public Defender for D.C., Steven R. Kiersh, Jeffrey Brian O'Toole, Julie Sippel Dietrich, O'Toole, Rothwell, Nassau & Steinbach, Washington, DC, Reita Pendry, Charlotte, NC, Harry J. Trainor, Jr., Brennan, Trainor, Billman & Bennett, LLP, Upper Marlboro, MD, for Defendants.

Brenda Jene Johnson, Wendy Leigh Wysong, Jonathan Martin Malis, U.S. Attorney's Office, George Z. Toscas, U.S. Department of Justice, Washington, DC, for United States Of America.

## MEMORANDUM OPINION

HUVELLE, District Judge.

The defendants are Hutus alleged to be members of the Army for the Liberation of Rwanda ("ALIR"). They have been named in a four-count indictment charging conspiracy, murder and other crimes arising from a March 1999 attack on tourists, including two American citizens, who were visiting the Bwindi Impenetrable National Park in Uganda. They now face prosecution for Terrorist Acts of Murder Abroad Against United States Nationals, Using a Firearm During a Crime of Violence, and Causing a Death Through the Use of the Firearm in violation of 18 U.S.C. §§ 2332, 924(c), (j) and 2.

Pursuant to the Federal Death Penalty Act, 18 U.S.C. §§ 3591 *et seq.*, the government filed its Notice of Its Intention To Seek the Death Penalty as to each defendant on November 17, 2004. The issue presented by the government's motion concerns the extent to which a defendant is entitled to discovery regarding the aggravating factors enumerated in the death penalty notice. While only one of the non-statutory aggravating factors is at issue at this juncture,[1] the Court believes that it would be prudent to address this issue more broadly so as to provide guidance regarding the principles it intends to apply regarding defendants' rights to discovery, as well as to be informed of the factual allegations underlying the statutory and non-statutory aggravating factors that the government will seek to prove during the penalty phase. In addition, as requested by the government (*see* Mot. for Reconsideration at 3 n. 2), a ruling on this matter may assist the government in determining whether and how to narrow the scope of any amended death penalty notice. Finally, given the extraordinary difficulties in obtaining evidence abroad, it is necessary to resolve these issues far in advance of trial so as not to cause inordinate delay in the penalty phase if one were to occur.

## PROCEDURAL BACKGROUND

By Order dated February 28, 2005, the Court granted defendant's motion to compel and required the government to produce "documents in its possession, custody and/or control that indicate or describe defendant's role in the ALIR and that indicate that others played more important leadership roles in ALIR during the time period specified in ¶ D of the Govern-

---

**1.** The death penalty notice lists five statutory aggravating factors (*see* 18 U.S.C. § 3592(c)), which are limited to the events at Bwindi, and five non-statutory aggravating factors (*see* 18 U.S.C. § 3593(a), (c)).

ment's Notice of its intent." Paragraph D of Part III of the Notice, which enumerates one of the five non-statutory aggravating factors that the government is relying on to justify the imposition of the death penalty, provides:

**Participation in the Activities of the Army for the Liberation of Rwanda.** According to their own statements and other evidence, defendants willingly joined the Army for the Liberation of Rwanda (hereinafter referred to as "ALIR"), knowing it to be an extremist organization that used violence to promote its goals which, among other things, included targeting citizens of other countries that supported the Rwandan government, including Americans. Defendants willingly participated in and supported ALIR's activities for at least seven years. Defendants demonstrated their personal commitment to and support for the violent activities of the ALIR by committing the offenses described in Counts Two, Three and Four which were targeted at Americans and other English-speakers because of their countries' support for the Rwandan regime.[2]

Following the entry of this February 28 Order, the government moved for reconsideration. On March 31, 2005, the Court agreed to reconsider its prior ruling and ordered the parties to address the issue of why the information previously ordered was "not discoverable pursuant to Fed. R.Crim.P. 16(a)(1)(E) and/or *Brady* given the defendant's due process right to 'rebut any aggravating factors, asserted by the Government.' *United States v. Edelin,* 180 F.Supp.2d 73, 75 (D.D.C.2001) (quoting *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977))." (3/31/05 Order.) In response, the government raises essentially three arguments: (1) it argues that defendant "is not entitled to discovery of evidentiary detail of the aggravating factors noticed by the government in a capital case where the death penalty notice is legally sufficient" (Mot. for Reconsideration at 2); (2) Rule 16(a)(1)(E) does not require disclosure because it does not apply to the penalty phase of a capital case (Reply at 4); and (3) *Brady* does not apply since the requested materials have no bearing "on the Bwindi attacks or the defendants, individually". (*Id.* at 7.) As to each of these arguments, the Court must disagree with both the government's parsimonious reading of the law, as well as its own Notice of Intent to Seek the Death Penalty.

## LEGAL ANALYSIS

### I.  Guiding Principles

The Court starts its analysis with a recognition that because this is a capital case, it is "qualitatively different," *Caldwell v. Mississippi,* 472 U.S. 320, 329, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), from all other cases, and thus, there is a need for "a heightened standard of reliability," *Ford v. Wainwright,* 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (citation and internal quotation marks omitted), and a "greater degree of scrutiny of the capital sentencing determination." *Caldwell,* 472 U.S. at 329, 105 S.Ct. 2633 (citation and internal quotation marks omitted). It is also "clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause,"

---

2. The remaining four non-statutory aggravating factors relate to the charges in the indictment, including their impact on the victims who were killed, as well as those who survived, and defendants' future dangerousness. Paragraph D appears, however, to stray far beyond the indictment to incorporate histori-cal events that precede the Bwindi attacks by some seven years. Given this time frame, it would be reasonable to assume that the events encompass a civil war in Rwanda when Hutus committed horrific acts of genocide against Tutsis in 1994.

for "sentencing is a critical stage of the ... proceeding." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). A defendant is therefore entitled to effective assistance of counsel at the penalty phase, *id.*, and in measuring counsel's performance, the Supreme Court has counseled that the ABA Guidelines for counsel in death penalty cases provide the governing "norms". *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989)). *Accord Hamblin v. Mitchell*, 354 F.3d 482, 486–87 (6th Cir.2003). In particular, the Court in *Wiggins* referenced the ABA Guideline which governs the investigatory duties of counsel with respect to the penalty phase of a capital trial, quoting its requirement that counsel must " 'discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.' " *Wiggins*, 539 U.S. at 524, 123 S.Ct. 2527 (quoting ABA Guidelines 11.4.1(C), p. 93) (emphasis in original). Since *Wiggins*, these Guidelines have been revised to be even more exacting insofar as they require counsel "to seek information that ... rebuts the prosecution's case in aggravation," Guideline 10.11(A), and to "determine at the earliest possible time what aggravating factors the prosecution will rely upon in seeking the death penalty and *what evidence will be offered in support thereof.*" *Id.* at 10.11(H) (emphasis added).

In addition to the above principles, there are constitutional and statutory limits on the types of aggravating factors, whether statutory or non-statutory, that may be considered by the jury. Pursuant to statute, once a jury finds that one or more statutory aggravating factors exist, the jury must then weigh all statutory and non-statutory aggravating factors against any mitigating circumstances and determine whether a death sentence is appropriate. *See* 18 U.S.C. § 3593(e). However, the aggravating factor's probative value must not be "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

In addition to these statutory requirements, certain constitutional principles govern aggravators. First, an aggravating factor may not be unconstitutionally vague. *Tuilaepa v. California*, 512 U.S. 967, 975, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) ("the basic principle [is] that a factor is not unconstitutional if it has some 'common-sense core of meaning ... that criminal juries should be capable of understanding' "); *Espinosa v. Florida*, 505 U.S. 1079, 1081, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (an aggravating factor may be unconstitutionally vague if it "leaves the sentence without sufficient guidance for determining the presence or absence of the factor"). An aggravating factor must serve a narrowing function, in that it must apply only to a subclass of those convicted of the underlying offense, *Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630, and "it must be particularly relevant to the sentencing decision," such that it provides a principled basis to enable the sentencer to distinguish those who deserve death from those who do not. *Gregg v. Georgia*, 428 U.S. 153, 192, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). Finally, an aggravating factor must also not be duplicative of or "necessarily subsume[d]" by another aggravating factor. *U.S. v. McCullah*, 76 F.3d 1087, 1111–12 (10th Cir.1996).

In addition to these general principles, courts have recognized that non-statutory factors serve a different function from statutory aggravating factors. As made clear in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), statutory factors define the class of per-

sons eligible for the death penalty, whereas the non-statutory aggravating factors, in addition to the statutory ones, assume a great significance in the penalty selection process, for they are weighed against the mitigating factors in order to decide whether to impose the death penalty. And, as noted by *Zant:*

> What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.

462 U.S. at 878, 103 S.Ct. 2733. *See also United States v. Regan*, 228 F.Supp.2d 742, 749–50 (E.D.Va.2002) ("the intent of non-statutory factors is to individualize sentencing based upon the character of the individual and the circumstances of the case"). Consistent with this observation, courts have scrutinized non-statutory aggravating factors to ensure that they meet a "strikingly high level of relevance and reliability." *United States v. Bin Laden*, 126 F.Supp.2d 290, 302 (S.D.N.Y.2001) (citation and internal quotation marks omitted). Therefore, as observed by the court in *United States v. Friend*, 92 F.Supp.2d 534, 543 (E.D.Va.2000):

> [R]elevance and heightened reliability, in the context of assessing a nonstatutory aggravating factor in a death penalty scheme, are two sides of the same coin. Together, they assure the twin constitutional prerequisites of affording a rational basis for deciding that in a particular case death is the appropriate punishment and of providing measured guidance for making that determination. Those objectives can only be accomplished if the proposed aggravating factor raises an issue which (a) is of sufficient seriousness in the scale of societal values to be weighed in selecting who is

to live or die; and (b) is imbued with a sufficient degree of logical and legal probity to permit the weighing process to produce a reliable outcome.

With these fundamental principles as guideposts, the Court will turn to the arguments raised by the government in its motion to reconsider.

## II. Defendant's Entitlement to Evidentiary Detail

■ Relying on *United States v. Nguyen*, 928 F.Supp. 1525, 1548–52 (D.Kan. 1996) and *United States v. Edelin*, 128 F.Supp.2d 23, 42 (D.D.C.2001), the government argues that the Court's order regarding production of documents in its possession with respect to a defendant's relative role in the ALIR during the time period specified in ¶ D of the Notice of Intent violates the general rule against ordering the disclosure of evidentiary detail. (*See* Mot. for Reconsideration at 2; Reply at 5.) This is not the case. While *Nguyen* ruled that a defendant is not entitled to pretrial discovery of the government's evidence in support of the aggravating factors, 928 F.Supp. at 1550–51, requiring the production of documents that are material to an aggravating factor does not violate this holding, since documents in the government's possession are not equivalent to the evidentiary bases of the noticed aggravator. In fact, in both *Edelin* and *Nguyen*, the courts and the government appear to have recognized the distinction between discovery, as traditionally encompassed by Fed.R.Crim.P. 16 and *Brady*, and discovery of the evidentiary basis of an aggravator.[3]

■ Second, and perhaps more importantly, it has been uniformly recognized

---

**3.** For instance, in *Edelin*, the Court noted that with respect to the defendant's Motion for Discovery of Evidence to be Used as Aggravators, the "government had complied with its discovery obligations under Federal Rule of Criminal Procedure 16." 128 F.Supp.2d at 41. Similarly, in *Nguyen*, the court distinguished between Rule 16 discovery and the "discovery and a bill of particulars regarding

that if the death penalty provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase, as well as to provide the court with some frame of reference for ruling on objections to the death penalty notice. *See, e.g., United States v. Cooper,* 91 F.Supp.2d 90, 111 (D.D.C.2000) (ordering greater specificity as to several aggravating factors); *United States v. Glover,* 43 F.Supp.2d 1217, 1225 (D.Kan.1999) (directing government to amend its death penalty notice to articulate its factual allegations as to certain aggravators); *United States v. Kaczynski,* 1997 WL 716487; at \*20 (E.D.Cal. Nov. 7, 1997) (although government had provided discovery regarding prior acts of violence, court also required the government to provide specification regarding the acts that it intended to rely on during the penalty phase so that the defendant would not "be forced to defend against these allegations for the first time ... at sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty."). *See also Carlisle v. United States,* 517 U.S. 416, 425–26, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (recognizing courts' "inherent supervisory power").

While it is unnecessary at this time to decide the issue of whether any statutory or non-statutory aggravating factor in the notice can pass constitutional muster, the Court believes that it would be advisable for the government to first consider whether it wishes to withdraw or clarify any of its aggravating factors to avoid the pitfalls identified herein. In particular with respect to ¶ D, it is difficult to agree with the government that its notice is legally sufficient, since one cannot know what is meant by the allegation that "defendants willingly joined" the ALIR, or that they "willingly participated in and supported ALIR's activities for at least seven years." Is the government, for instance, intending to introduce "unadjudicated misconduct evidence" against the defendants (*see Kaczynski,* 1997 WL 716487, at \*20); is it expecting to attribute acts of terrorism to defendants by virtue of their membership in an allegedly extremist organization (*see Bin Laden,* 126 F.Supp.2d at 303); or is it planning to offer evidence at the penalty phase regarding a protracted civil war where acts of genocide resulted in the death of hundreds of thousands of Rwandans?

As is obvious, this non-statutory aggravator raises a host of problems, and therefore, before the Court will consider the scope of defendants' rights to discovery or address any constitutional challenges, it will require the government to decide whether it will narrow or eliminate any of the aggravating factors.

### III. Discovery

■■ In responding to the above inquiry, the Court also believes that it is appro-

---

evidence that the government intends to present at the penalty phase of trial," concluding that it can "see no reason why the same discovery rules and statutes applicable at the guilt phase of trial (and the same applied in its Order of January 26) would not apply here. *See* Fed.R.Crim.P. 7; Fed.R.Crim.P. 16; 18 U.S.C. § 3500 ('Jencks Act')." 928 F.Supp. at 1548 n. 26. *See also United States v. Williams,* 2004 U.S. Dist. LEXIS 25644, at \*61, 80–81 (S.D.N.Y. Dec. 22, 2004) (recognizing that a notice of intent generally need not list specific evidence but noting approvingly that the government had provided specification of the aggravating factors it intended to prove, and it had represented that it had produced material discoverable under Rule 16 of the Federal Rules of Criminal Procedure and *Brady/Giglio* relating to aggravating factors).

priate to alert the government that it will not accept the government's apparent attempt to constrict its discovery obligations with respect to the penalty phase. While the government has proffered a series of technical arguments regarding Rule 16, the Court need not resolve the issue of whether Rule 16 applies to the penalty phase, since, as noted above, district courts have inherent authority to order discovery outside the rules. *See, e.g., United States v. Beckford,* 962 F.Supp. 748, 755–56 (E.D.Va.1997); *United States v. Glover,* 43 F.Supp.2d at 1222; *United States v. Kaczynski,* 1997 WL 716487, at *20. Accordingly, the Court would expect the prosecutors, as they have done without court intervention in other cases (*see supra* note 3), to interpret their obligations with respect to the penalty phase no differently than they would with respect to the guilt phase, and as to all aggravating factors, they must be guided by the Court's prior admonition that they should err on the side of providing discovery. *See United States v. Karake,* 281 F.Supp.2d 302, 306 (D.D.C.2003). As the Court has had to repeatedly admonish the government, in view of the obstacles that confront defense counsel who represent foreigners charged with committing capital offenses over six years ago in a remote Ugandan park, the government cannot expect to satisfy its discovery obligations by producing the bare minimum. *Id.* at 310.

### IV. *Brady/Giglio*

█ Finally, the Court is troubled by the government's argument (*see* Reply at 6–8) that the materials covered by the Court's Order are not producible under *Brady.* While the government realizes that exculpatory evidence must be disclosed if it is "favorable to an accused" and "material to punishment," *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it proceeds to interpret its duty in an exceedingly narrow

manner by arguing that the materials which the Court has ordered produced are not exculpatory or material to punishment since they lack relevance to "the Bwindi attacks or the defendants, individually." (Reply at 7.) This argument completely ignores the striking breadth of the aggravating factor set forth in ¶ D, which can be read to suggest that defendants were active and willing participants in the ALIR for a seven-year period. Obviously, if there is contradictory evidence, including evidence that a defendant's role was minor relative to others, this could be discoverable. In short, if the jury is going to consider an aggravating factor, defendant must be provided with evidence in the government's possession to rebut that factor. Thus, if the government intends to elicit evidence unrelated to the events at Bwindi in an effort to justify the imposition of the death penalty, any contradictory information, including information that suggests that a defendant was not an active or willing participant over the seven years at issue, would be favorable evidence, since it could justify a sentence of life imprisonment as opposed to death. *See United States v. Beckford,* 962 F.Supp. 804, 811 (E.D.Va.1997).

Again, the Court will refrain from resolving this issue at this time in order to give the government the opportunity to further refine its death penalty notice.

### CONCLUSION

In light of the above considerations, the Court will withdraw the first paragraph of its Order dated February 24, 2004, since it is premature to determine what discovery will be granted regarding the aggravating factors set forth in the death penalty notice. The Court, however, has responded to the government's arguments in order to eliminate future discovery disputes and to assist the government in its assessment of

whether and how to narrow the scope of any amended death penalty notice. It is expected that on or before May 27, 2005, the government will inform the Court and defense counsel whether it intends to amend its notice.

### ORDER

Upon consideration of the government's motion to reconsider and the opposition thereto, it is this 20th day of May, 2005, hereby

**ORDERED** that the motion will be **GRANTED** insofar as the government need not, at this time, produce the documents covered by the first paragraph of the Order dated February 28, 2005. Instead, the government is required to inform the Court and counsel, on or before May 27, 2005, whether it intends to amend its notice to eliminate or narrow any of the aggravating factors. It is the Court's intent to consider a schedule for discovery regarding the penalty phase at the upcoming status on June 6. At that status, the Court will also address the government's Motion for Scheduling and the BOP's opposition, to be filed on May 31, 2005, to providing access for a prison tour of ADX Florence (*see United States v. Edelin*, 180 F.Supp.2d 73 (D.D.C.2001)); and it is

**FURTHER ORDERED** that with respect to Mr. Ross' testimony, which the Court has reviewed *ex parte, in camera*, that the government shall produce the identifications and/or descriptions of any participants identified as leaders by Mr. Ross. As held by this Court in *United States v. Karake*, 281 F.Supp.2d 302 (D.D.C.2003), evidence indicating that others were equally or more culpable constitutes mitigating evidence and is therefore producible under *Brady*. Mr. Ross's identifications and descriptions of others who

may fall within this category must therefore be produced.